EDWARD L. O'BRIEN, trustee in reorganization of Trailways of New England, Inc. *vs.* STATE TAX COMMISSION.

Suffolk. February 2, 1959. — April 16, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ

*Taxation,* Motor vehicle excise; Appellate Tax Board: decision. *Constitutional Law,* Taxation, Interstate commerce, Due process of law, Equal protection of laws. *Evidence,* Judicial notice, Relevancy and materiality.

A decision made by the Appellate Tax Board under G. L. c. 58A, § 13, as amended, without any findings of fact must be sustained if supported by substantial evidence. [59]

The imposition of a fee for the registration of motor vehicles under G. L. c. 90, an excise on motor vehicles under c. 60A for the privilege of such registration, and a tax under c. 64A on gasoline sold, not unreasonable in their aggregate burden or discriminatory, does not constitute double taxation forbidden by the Massachusetts Constitution. [61–64]

Evidence would have warranted a finding by the Appellate Tax Board that both an inhabitant of Massachusetts who was the trustee in reorganization under the bankruptcy act of a Massachusetts corporation engaged in interstate and intrastate business as a common carrier of passengers by buses, which were principally garaged outside Massachusetts but were registered here, and the corporation, which had its "general office" here, had their principal place of business here and were not exempted from the excise on such buses under G. L. c. 60A, § 1, as appearing in St. 1954, c. 640, § 1, by reason of the reciprocity provision therein. [64]

This court took judicial notice that there are substantial expenses, both State and local, closely connected with motor vehicles and highways, which are not met from the highway fund established under G. L.

c. 90, § 34, as amended, into which are paid the gasoline tax revenues under c. 64A and motor vehicle registration fees under c. 90, but not motor vehicle excises under c. 60A.  [66]

It is immaterial to the constitutionality of the excise imposed on registered motor vehicles by G. L. c. 60A that money collected thereunder is not segregated for highway purposes but is paid into State or local general funds.  [66]

A contention that the imposition under G. L. c. 60A of an excise on motor buses principally garaged outside Massachusetts but registered here and owned by the trustee in reorganization under the bankruptcy act of a Massachusetts corporation engaged in both interstate and intrastate business as a common carrier of passengers was unconstitutional as imposing a burden on interstate commerce in violation of the commerce clause of the Constitution of the United States was without merit where the trustee did not establish that he was required by c. 90 to register the buses here in order to operate them upon the highways here, or the extent to which the buses were operated here or used in connection with the corporation's places of business here, or that the excise was imposed upon the buses for the privilege of doing a purely interstate business or unduly burdened interstate commerce, or that the aggregate of the excises imposed by c. 60A, c. 64A, and c. 90 was excessive or unreasonable or discriminatory against interstate carriers.  [67–68]

A contention that the imposition under G. L. c. 60A of an excise on motor buses measured by the value of the vehicles, which were principally garaged outside Massachusetts but were registered here and owned by the trustee in reorganization under the bankruptcy act of a Massachusetts corporation engaged in both interstate and intrastate business as a common carrier of passengers, violated the due process clause of the Fourteenth Amendment to the Constitution of the United States was without merit where the trustee did not establish that he was required by c. 90 to register the buses here.  [68–69]

An assertion by an inhabitant of Massachusetts, trustee in reorganization under the bankruptcy act of a Massachusetts corporation having its principal place of business here and engaged in interstate and intrastate business as a common carrier of passengers by buses, principally garaged outside Massachusetts but registered here and subjected to motor vehicle excises under G. L. c. 60A, § 1, as appearing in St. 1954, c. 640, § 1, that the reciprocity provisions of § 1 denied him the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States, was not supported by the record in a proceeding seeking abatement of the excises.  [69]

At a hearing by the Appellate Tax Board of an appeal from a refusal by the State tax commission to abate 1955 motor vehicle excises assessed on buses under G. L. c. 60A, there was on the record no error in the exclusion of evidence of an abatement by the commission of such excises on buses of the appellant in 1954 or in the exclusion of certain correspondence between the appellant and a subordinate official of the commission with respect to the excises.  [70]

APPEAL from a decision by the Appellate Tax Board.

*William H. Tucker*, for the taxpayer.

*Edward F. Mahony*, Assistant Attorney General, for the State Tax Commission.

CUTTER, J. This is an appeal from a decision of the Appellate Tax Board sustaining the State tax commission (the commission) in refusing to abate certain 1955 motor vehicle excise taxes assessed under G. L. c. 60A on twenty-one buses. The appellant, Mr. Edward L. O'Brien, of Northampton, Massachusetts (the trustee), on May 18, 1954, was appointed by the United States District Court for the District of Massachusetts trustee in reorganization, under c. X of the bankruptcy act, of Trailways of New England, Inc., a Massachusetts corporation (Trailways). He served as trustee until December 17, 1956.

Trailways was engaged in both interstate and intrastate business as a common carrier of passengers by bus. Seventeen buses were registered in Massachusetts on January 1, 1955, and four on April 1, 1955, under G. L. c. 90, § 2, upon application by the trustee.[1] On the basis of the registrations (see G. L. c. 60A, § 2, as amended by St. 1954, c. 640, § 2) tax bills for the motor vehicle excise imposed under G. L. c. 60A, § 1, as amended by St. 1954, c. 640, § 1, were made out by the commissioner of corporations and taxation to Trailways at its office in West Springfield, because the buses were "garaged outside the Commonwealth."

Applications for abatement of the excise imposed with respect to each such vehicle were signed by the trustee and filed with the State tax commission under the so called "reciprocity" provision of G. L. c. 60A, § 1 (as appearing in

---

[1] No point is now made by the appellant of the circumstance that the registrations and tax bills were issued in the name of Trailways, rather than in the name of the trustee who had legal title to Trailways' assets. See 6 Collier, Bankruptcy (14th ed.) § 8.02; Remington, Bankruptcy (1947 ed.) § 4493. No issue of law on this question was raised by the petition to the Appellate Tax Board, so the question is not open now. G. L. c. 58A, § 7, as amended by St. 1953, c. 654, § 25. The form of the registrations, in any event, would appear to have been a clerical inadvertence by the registry of motor vehicles, since the applications for registration were made by the trustee. The application should control the registry's mistake. See *MacInnis* v. *Morrissey*, 298 Mass. 505, 508–509; *Sanjean* v. *Hyman*, 302 Mass. 224, 225–226.

St. 1954, c. 640, § 1).[2]  Each application was denied by the commission without a statement of reasons.  The trustee on February 6, 1956, filed a petition with the Appellate Tax Board appealing "from the refusal of . . . [the commission] to abate a tax . . . assessed on motor vehicles owned by the appellant . . . which . . . are customarily kept or garaged in other States."  The Appellate Tax Board denied various requests of the trustee for rulings and excluded certain evidence.  On January 27, 1958, it entered a decision for the commission without making findings of fact.  No request that it make such findings was filed within ten days of the decision as permitted by G. L. c. 58A, § 13 (as amended through St. 1957, c. 522).  Thus, if there was substantial evidence to support the conclusions of the board as reflected in its decision and by its rulings of law (or the absence of evidence on issues as to which the trustee had the burden of proof), the decision of the board is to be sustained.  See

---

[2] Section 1, as thus amended, so far as here pertinent, reads, "Section 1. . . . [T]here shall be assessed and levied in each . . . year on every motor vehicle . . . registered under chapter ninety, for the privilege of such registration, an excise measured by the value thereof . . . at the average state rate for the calendar year, as determined in the manner provided in section fifty-eight of chapter sixty-three.  For the purpose of this excise the value of each such . . . vehicle . . . shall be . . . the value . . . of motor vehicles . . . of the same make, type, . . . and year of manufacture . . . but not in excess of the following percentages of the list price . . . [here follows table of percentages] . . . .  [The following words, except the last sentence of the section, constitute the "reciprocity" provision mentioned above.]  The excise . . . shall not apply to the registration by an inhabitant of any state *other than this commonwealth* or by a . . . *corporation which does not have a principal place of business in this commonwealth,* of any motor vehicle . . . to be customarily kept in another state if such other state does not impose an excise, privilege or property tax or fee in lieu of or in addition to a registration fee, or does not impose a registration fee at a rate greater than that required for registration in this commonwealth, upon motor vehicles . . . customarily kept in this commonwealth and registered by an inhabitant of this commonwealth, or by a partnership, voluntary association or corporation having its principal place of business in this commonwealth.  The commissioner shall determine what states do not impose such additional excise, privilege or property tax or fee, or registration fee or fee in lieu of such levies and his determination shall be final.  Notwithstanding any provision of law to the contrary, *common carriers,* including towing trucks operated for hire on dealers' registration plates, shall be subject to the excise imposed by this section" (emphasis supplied).  The reciprocity provision was amended by St. 1947, c. 644, to make it inapplicable to a Massachusetts corporation having its principal place of business in Massachusetts and to an inhabitant of Massachusetts, thus changing the provision as construed by the Appellate Tax Board with respect to a 1941 excise on Trailways.  See *Trailways of New England, Inc.* v. *Commissioner of Corps. & Taxn.* Mass. A. T. B. Adv. Sh. (1945) 23, 24.

G. L. c. 30A, § 14 (8) (e). The only assignments of error which have been argued in the trustee's brief (see Rule 13 of the Rules for the Regulation of Practice before the Full Court [1952], 328 Mass. 698) and are open on this appeal are (a) that the excise imposed by c. 60A is prohibited by the Constitution of the Commonwealth as double taxation; (b) that the excise imposed by c. 60A as applied to the trustee is unconstitutional as violating the commerce clause and the Fourteenth Amendment to the Federal Constitution; and (c) that the Appellate Tax Board improperly excluded evidence offered by the trustee in an effort to show the commission's prior construction of c. 60A.

The following facts, in addition to those already stated, could have been found upon the present record. On December 17, 1956, the trustee was discharged by decree of the United States District Court and Trailways then resumed possession of its properties. It was "ordered to assume and pay all obligations of the trustee, incurred by him as such, and which he has not paid." Trailways was authorized to prosecute "actions brought in any court by the trustee," and these were to "inure to the benefit of" Trailways. We construe this provision as intended to be broad enough to include this then pending petition on appeal to the Appellate Tax Board, although, strictly speaking, this petition was not an "action" nor was it then a proceeding in "any court." The approved plan of reorganization provided that "[a]ll obligations of the [t]rustee, which are due and payable, will be paid in full at or prior to the consummation of the [p]lan. Any such obligation which may be due and payable after the date of consummation shall be assumed and paid by the reorganized corporation."

During 1955, Trailways (and the trustee) had its "general office" in West Springfield, Massachusetts, and had a supervisor at the Park Square Terminal in Boston. The "major portion of the business was . . . between Boston . . . and New York city" and Trailways had "a place of business in" the Port Authority Bus Terminal in New York, where was "the principal control of this Boston–New York operation."

Trailways also had "through operations[3] south of New York to Raleigh . . . and north of Boston to Bangor." The West Springfield office "was primarily general office where the accounting was handled, the books . . . [were] kept, [and] so forth." Directors' and stockholders' meetings were held there and in the petition for its reorganization, filed in the United States District Court, Trailways "alleged that . . . [its] principal place of business was Massachusetts." "[O]perations were controlled mainly in Hartford." The "junction point, the hub of . . . operations was in . . . New York city." The principal place of garaging the buses here involved was Hartford. The trustee introduced no evidence showing the amount of time the buses were present in the Commonwealth or were operated elsewhere. All of the buses in issue were registered in 1955 in Connecticut and some were also registered in New York, Maryland and Virginia. Four buses were required by Trailways for intrastate operations. Two of these were garaged in Massachusetts but these are not here involved for the applications for abatement of the excises with respect to them have been withdrawn. Twenty-one other buses are involved in the present case with a total excise assessment of $7,821.18 exclusive of interest.

At the time of registration of the buses, the trustee paid to the registrar of motor vehicles a registration fee of fifty cents per seat under G. L. c. 90.[4]

1. The trustee contends that the imposition of both the registration fee (c. 90, §§ 2, 33) and the excise under G. L.

[3] The lines then operated were Boston–New York via Hartford and Worcester and via Springfield; New York to Haverhill, Newburyport, and Hampton Beach, via Springfield and Athol; and numerous race track operations. There was an intrastate operation Springfield to Haverhill.

[4] Various provisions of G. L. c. 90 are pertinent in this case. Although some of them have been amended since January 1, 1955, those here relevant are: § 2, as amended by St. 1954, c. 305, requiring application for registration to be made by the owner, accompanied by the "registration fee . . . required" by § 33 (as amended through St. 1954, c. 241); § 34 (as amended through St. 1943, c. 427, § 2) placing such fees in the highway fund for use for defined highway purposes; and § 9 (as amended through St. 1952, c. 244) forbidding the operation of unregistered motor vehicles on the ways of the Commonwealth (except when owned by a nonresident or under other circumstances as specified in § 3). See footnote 9, infra.

c. 60A, .§ 1 (see footnote 2, *supra*), involves double taxation in violation of the Constitution of the Commonwealth. Undoubtedly both taxes are excises. They are imposed with respect to "commodities" very like one another. See *Opinion of the Justices*, 250 Mass. 591, 602–604. See, as to the constitutional meaning of the term "commodity," *Opinion of the Justices*, 282 Mass. 619, 623–624. A closely related excise is the gasoline tax imposed by G. L. c. 64A, § 4 (as amended through St. 1953, c. 654, § 72; since then most recently amended by St. 1957, c. 617, § 6). This tax was construed in *Commonwealth* v. *Wallace*, 294 Mass. 31, 34, as an "excise upon the sale or use of gasoline for propelling motor vehicles . . . upon . . . the highways of the Commonwealth."

Massachusetts taxing statutes will be "interpreted so as not to cause double taxation unless no other reasonable construction is practicable." *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 439–440. *New England Mut. Life Ins. Co.* v. *Boston,* 321 Mass. 683, 691. It was assumed in *Opinions of the Justices,* 250 Mass. 591, 603, (1) "that the assessment of two excise taxes, even though each be upon a separate basis and collected by different officers, for the enjoyment or use of one commodity by a single person for the same period of time would be unreasonable" and (2) that the "principle against double taxation . . . is . . . as applicable to excise as to property taxation." We have been referred to no decision, however, where this court has said that the Legislature lacked power, when it exhibited plainly its deliberate intention to do so, to impose two or more separate nondiscriminatory excises with respect to substantially similar commodities. The imposition of two such reasonable excises is certainly not in terms forbidden by the Massachusetts Constitution, Part II, c. 1, § 1, art. 4, giving to the Legislature the power "to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the . . . commonwealth; and also to impose and levy, reasonable duties and excises, upon any . . . com-

modities . . . within the same." In the absence of discrimination, clear unreasonableness, denial of due process of law, or denial of the equal protection of the laws by an improper classification, we think that, under art. 4, a clear legislative intention to impose two fair excises with respect to or upon the same subject matter constituting a proper object of excise taxation must be respected.[5] Much of what is said in our cases about the problem of double taxation stems from *Otis* v. *Boston*, 12 Cush. 44, 47–48, in which there was discussion of the impropriety of a property tax by two different municipalities on the same property of the same person on the same annual tax day. Despite the assumptions, already mentioned, in *Opinion of the Justices*, 250 Mass. 591, 603, the language of the *Otis* case should not be given a wider significance than is warranted by its facts.

Here there is clear evidence of the Legislature's deliberate intention to impose in the aggregate the registration fee or excise under c. 90, § 33, as amended, the motor vehicle excise under c. 60A, and the gasoline excise under c. 64A, all with respect to aspects of the use of Massachusetts highways by motor vehicles or steps in obtaining the privilege of such use. The many amendments of c. 60A, of c. 64A, and of c. 90 (see St. 1936, cc. 380, 401), not only in 1936 (see St. 1936, c. 357) but over the years, leave us with no doubt that the Legislature has continuously intended that all three excises shall be imposed.

With respect to the registration fee (c. 90), motor vehicle excise (c. 60A), and gasoline tax (c. 64A), the constitutional authority to impose all three is now reinforced by art. 78 of the Amendments to the Constitution of the Commonwealth which refers specifically to "fees, duties, excises or license

---

[5] There is no double taxation by the excises here discussed which would be in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution, *Swiss Oil Corp.* v. *Shanks*, 273 U. S. 407, 413, *Carley & Hamilton, Inc.* v. *Snook*, 281 U. S. 66, 72, or the commerce clause. See *Aero Mayflower Transit Co.* v. *Board of R.R. Commrs.* 332 U. S. 495, 506–507. "[A] state may impose two excise taxes upon the same privilege when the total tax, if imposed by a single statute would not transgress the due process clause [or the equal protection clause], or bears a reasonable relation to the privilege granted." Nichols, Taxation in Massachusetts (3d ed.) 72.

taxes relating to registration, operation or use of vehicles on public highways, or to fuels used for propelling such vehicles," as well as to "any excise tax imposed in lieu of local property taxes for the privilege of registering such vehicles." Regardless of whether the several separate privileges mentioned are substantially different from one another, art. 78 is a clear constitutional recognition of the Legislature's power, subject to the limitations of art. 78 where applicable, to impose any or all of the existing excises under G. L. cc. 60A, 64A, and 90 in its efforts to provide revenues to meet the heavy and varied costs of government created by motor vehicles.

There has been no showing by the trustee, on whom the burden of proof rests, that the aggregate burden of the excises under c. 60A, c. 64A, and c. 90 is in its general application unreasonable or that the taxes are in any respect discriminatory. We perceive no merit in the trustee's contention that there is here any double taxation forbidden by the Massachusetts Constitution.

2. Within the meaning of the reciprocity provision of c. 60A, § 1 (see footnote 2, *supra*), the Appellate Tax Board would have been warranted in finding upon the evidence already summarized that both the trustee and Trailways had their principal place of business in Massachusetts. The trustee was an inhabitant of Massachusetts. Accordingly, neither the trustee nor Trailways was exempt under the reciprocity provision from the excise under c. 60A, § 1, for the provision applies only to "an inhabitant of any state *other than* this commonwealth or . . . a . . . corporation which *does not have a principal place of business in this commonwealth*" (emphasis supplied) with respect to "any motor vehicle . . . to be customarily kept in another state" under other circumstances stated in § 1. If the buses here involved were registered in Massachusetts, c. 60A, § 1, applied to them.[6]

---

[6] The *reciprocity provision in 1955 covered common carriers as well as* other corporations, despite the provisions of the last sentence quoted from c. 60A, § 1, in footnote 2, *supra.* That sentence was first inserted by St. 1951,

3. We next consider whether the 1955 excise under c. 60A, § 1, as applied to the trustee and Trailways, violated the commerce clause (art. 1, § 8), or the due process or equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

The history of c. 60A establishes that it is, as stated in its title (see St. 1928, c. 379, § 1), an "excise tax on registered motor vehicles in lieu of local tax." Its original enactment was materially induced[7] by the practical "difficulties in assessing, as of a single tax day, the former local property tax on motor vehicles. See G. L. c. 59, §§ 2, 4, but see § 5, Thirty-fifth, inserted by St. 1928, c. 379, § 4 (most recently amended by St. 1939, c. 24, § 2). At first, the excise was stated to be imposed on each registered vehicle "for the privilege of operating . . . upon the highways during such year." Shortly after the decision of *Commonwealth* v. *Wallace*, 294 Mass. 31, on March 2, 1936, c. 60A, § 1, was amended to impose the motor vehicle excise on the "privilege of . . . registration" under c. 90 instead of upon the privilege of operating upon the highways. See St. 1936, c. 384.[8]

In considering the validity of State motor vehicle taxes, the Supreme Court of the United States has given weight to the purpose for which the revenues are used. See *Capitol Greyhound Lines* v. *Brice*, 339 U. S. 542, 544. Pursuant to art. 78 of the Amendments to the Massachusetts Constitution, gasoline tax revenues (G. L. c. 64A, § 13) and registration fees (G. L. c. 90, § 34, as amended through St. 1943, c. 427, § 2) must be paid into the highway fund to be used

c. 165, in the somewhat obscure form quoted in footnote 2. The title of the 1951 statute indicates that it was intended to apply only to vehicles operated for hire on dealers' registration plates. This meaning was made plain by a clarifying amendment by St. 1957, c. 174.

[7] See 1928 House Doc. No. 490, pp. 36–40; 1930 House Doc. No. 900, pp. 20–23; Report, Commr. of Corps. & Taxn. 1928 (1928 Pub. Doc. No. 16) pp. 11–24. An excise, as distinguished from a property tax, could be imposed upon the exercise at any time during the tax year of some privilege with respect to the motor vehicle on the public highways. See discussion in *Opinion of the Justices*, 250 Mass. 591, 599–601.

[8] See report of a special recess commission on taxation, 1936 House Doc. No. 143, pp. 13, 34; 1936 House Bill No. 1629 (reported by the committee on taxation on March 16, 1936, a few days after the decision in the *Wallace* case). See also 1936 House Bills Nos. 1837 and 1879.

for specified State highway purposes.  See *Opinion of the Justices*, 324 Mass. 746, 749–752.  Article 78 does not apply, however, to the excises under c. 60A.  In the present case (where the vehicles are garaged outside Massachusetts) the excises are to be collected by the commissioner (see G. L. c. 60A, § 2, as amended by St. 1957, c. 375).  In other cases, where the vehicle is kept in a particular Massachusetts municipality, the excise is locally collected.  We take judicial notice that there are substantial expenses, both State and local, closely connected with motor vehicles and highways (e.g. local highways and streets, local police protection and traffic control, State court expenses because of accident litigation and traffic law enforcement) which are not met, and some of which cannot be met, from the highway fund.  There is no proof in the present case that the revenue received under c. 60A is in excess of (or even approaches in magnitude) these large expenses not met from the highway fund.  It seems immaterial that the money collected under c. 60A is not segregated for highway purposes but is paid into State or local general funds.  *Aero Mayflower Transit Co.* v. *Board of R.R. Commrs.* 332 U. S. 495, 502–506.

The excise would not have been imposed with respect to any buses which the trustee did not register.  We have recently held that a resident of Massachusetts or a Massachusetts corporation owning "a motor vehicle . . . not registered here can lawfully operate it on the ways here only if he meets the following requirements: (1) he must have a place of business in another State . . .; (2) the vehicle must be a commercial . . . vehicle . . . and must be used in connection with the place of business; (3) the vehicle must be customarily garaged in the jurisdiction in which the place of business is located; and (4) it must be registered there." See *Companion* v. *Colombo*, 338 Mass. 620, 623.  See also G. L. c. 90, § 3 (as amended by St. 1941, c. 282), and § 9 (as amended through St. 1952, c. 244).  The provisions of § 3, quoted in the margin,[9] would have required the trus-

---

[9] The first paragraph of § 3 grants nonresidents on a reciprocal basis freedom from registration on terms which need not be set out here.  The last paragraph

tee in 1955 at most to register in Massachusetts no more than the average number of buses regularly used in connection with his place of business here, and which thus had a clear and close relationship to the use of the highways of Massachusetts. Such facts as appear in the record suggest that, with respect to Trailways buses either used solely in interstate business or used in connection with an out-of-state office, the trustee might well have been able to meet the requirements of § 3 for exemption from any Massachusetts registration. In any event, the trustee has not proved with any certainty before the Appellate Tax Board facts showing that he was required by c. 90 to register in Massachusetts the whole or any particular part of the Trailways fleet of buses, in order to operate upon the highways of the Commonwealth, or the extent to which in 1955 the component vehicles of that fleet were operated in Massachusetts or used in connection with places of business here.

The trustee and Trailways are contending that the 1955 excises deprive them of various Federal constitutional rights. To succeed they must establish with some precision the facts upon which their contentions depend and that the requirements of Massachusetts statutes (and not the trustee's failure to take advantage of opportunities afforded by these statutes) produce the consequences said to be invalid. There has been no such showing. Nothing indicates that

---

of § 3 reads, "A corporation organized under the laws of this commonwealth, or a person resident therein, having a place of business in another state . . . shall, with respect to the operation upon the ways of this commonwealth of a commercial motor vehicle . . . which is used in connection with such place of business, is customarily garaged in such other state . . . and is registered therein, have the rights and privileges and be subject to the obligations imposed by this section." An earlier sentence of § 3, inserted by St. 1953, c. 463, § 3, provides that a "motor vehicle . . . owned by a non-resident and used in direct connection with a place of business of such non-resident within this commonwealth shall be registered . . . provided, that a non-resident who uses motor vehicles . . . both in direct connection with his place of business in this commonwealth and in connection with a place or places of business outside the commonwealth need not register in this commonwealth more than . . . the average number of his vehicles regularly used in connection with his place of business in this commonwealth." Nothing in G. L. c. 159A (relating to passenger motor carriers) seems to require Massachusetts registration of buses used solely in interstate commerce. General Laws c. 159A, § 1 (as amended through St. 1949, c. 297, § 11), states that the chapter does not apply to exclusively interstate carriage of passengers.

the trustee was compelled to submit to an excise upon the doing of purely interstate business of the type held invalid in *Spector Motor Service, Inc.* v. *O'Connor,* 340 U. S. 602, 607–610. See *Northwestern States Portland Cement Co.* v. *Minnesota* (and a companion case), 358 U. S. 453, 463–464, 494–495; Hellerstein, State Taxation of Interstate Business under the Commerce Clause, 5 Journ. of Taxn. 303, 304; Kahn, Federal Limitations upon State Motor Carrier Taxation and Regulation, 32 Temple L. Q. 61, 70–72. There has been no proof that any undue burden is placed by c. 60A on interstate commerce in return for protection given by Massachusetts and its municipalities or that an unduly high price is asked in the aggregate (by this tax in lieu of property taxes on the buses and by the excises under c. 64A and c. 90) for the privileges inherent in registration and the use (see *Dixie Ohio Express Co.* v. *State Revenue Commn.* 306 U. S. 72, 77–78) of State and local highways, or that there is any measurable excess of revenues from these aggregate excises over the relevant governmental expenditures related to highways and motor vehicles, in part at least financed by them. There is no discrimination against interstate carriers. See *Capitol Greyhound Lines* v. *Brice,* 339 U. S. 542, 545–548. See Notes, 100 U. of P. L. Rev. 71, 74–76; 17 A. L. R. 2d 421. The trustee has not sustained his contentions under the commerce clause.

Similar considerations determine that there has been here no denial to the trustee or to Trailways of due process of law. The trustee cannot accept the advantages of a statutory registration not shown to have been required and assert that the statutory burdens which follow such registration deny him due process of law. See analogy of *St. Louis Malleable Casting Co.* v. *George C. Prendergast Constr. Co.* 260 U. S. 469, 471–473; *United States* v. *San Francisco,* 310 U. S. 16, 30; *Callanan Road Improvement Co.* v. *United States,* 345 U. S. 507, 512–513. See also *Shemeth* v. *Selectmen of Holden,* 317 Mass. 278, 280–281; *Poulos* v. *New Hampshire,* 345 U. S. 395, 400–402. Even if the taxes here involved had been property taxes, rather than excises, no

facts have here been proved which would indicate that these taxes could not properly have been imposed by Massachusetts upon its own inhabitant, or upon one of its own corporations, with respect to a vehicle registered for use, and in fact used, upon the highways of the State. See *Northwest Airlines, Inc.* v. *Minnesota*, 322 U. S. 292, 294–300; *Chicago* v. *Willett Co.* 344 U. S. 574. See also *Miller Bros. Co.* v. *Maryland*, 347 U. S. 340, 344–346. Cf. *Standard Oil Co.* v. *Peck*, 342 U. S. 382, 383–385; *Braniff Airways, Inc.* v. *Nebraska State Bd. of Equalization*, 347 U. S. 590, 601–602; *Chicago* v. *Atchison, T. & S. F. Ry.* 357 U. S. 77, 88–89. Whatever might have been the situation if the trustee had established that he was required to register in Massachusetts (and to pay excises under c. 60A accordingly) a number of vehicles disproportionate to his use of them upon the highways of this State, no such proof has been made. Here the Appellate Tax Board might reasonably have concluded that it was the trustee's unrequired, voluntary seeking of the privilege of registration of the vehicles (possibly for whatever advantages registration at his domicil might afford in other States) which resulted in the excises, rather than any statutory compulsion.

We see no objection to the excise on the ground that it is measured by the value of the vehicle rather than by the extent of actual use of Massachusetts highways. Value of the vehicle was an excise measure approved in *Capitol Greyhound Lines* v. *Brice*, 339 U. S. 542, 545–548.

The trustee asserts that he has been denied the equal protection of laws by the reciprocity provisions of c. 60A, § 1. The trustee as a resident of Massachusetts is given substantially the same opportunity under c. 90, § 3, through not registering business vehicles, registered and kept elsewhere and used in connection with an out-of-state office, to escape the excise imposed under c. 60A, as is afforded to a foreign corporation by the reciprocity provisions of c. 60A, § 1 (see footnote 2, *supra*). If there in fact is any discrimination the trustee has not established on this record that one exists. He certainly has not established that he and Trailways

were treated on any less favorable basis than similarly situated Massachusetts corporations and inhabitants of this State. As stated above (see footnote 6, *supra*), the reciprocity provisions of c. 60A, § 1, were in 1955 (and are now) equally applicable to carriers and other corporations except for the exclusion of vehicles, if there were any, operated on dealers' plates.

The presence of reciprocity provisions in c. 60A, § 1, has not been shown to have caused any discrimination by which the trustee has been aggrieved. See *Geo. F. Alger Co.* v. *Bowers,* 166 Ohio St. 427, 429–433, app. dism. 358 U. S. 43; *Kaplan Trucking Co.* v. *Bowers,* 168 Ohio St. 141, cert. den. 359 U. S. 927.

4. The Appellate Tax Board excluded testimony offered by the trustee in an attempt to show (a) that in 1954 the commission abated, on the grounds of "reciprocity," excises assessed against Trailways, and (b) that there was correspondence between Trailways and a subordinate official of the commission with reference to the excise which would be imposed under c. 60A if certain buses leased to Trailways should be registered in Massachusetts. In a proper case, appropriate proof of department regulations, general rulings, and well established departmental practice may be admissible as an aid to statutory interpretation. *Second Bank-State St. Trust Co.* v. *State Tax Commn.* 337 Mass. 203, 211. *Allen* v. *State Tax Commn.* 337 Mass. 502, 508n. The trustee does not contend that the 1954 ruling or the 1955 correspondence in any way bound or estopped the commission. See *Collins* v. *Boston,* 338 Mass. 704, 709. In any event, the offers of proof made did not disclose (a) that the situation in 1954, with respect to the abatements then granted, was in all respects the same as in 1955, the year here involved, or (b) that in the 1955 correspondence all the facts relevant to the liability for excise tax of the buses were stated accurately, or (c) that there was any authority in the representative of the commission to make any binding ruling. On these grounds alone the evidence was properly excluded. We need not consider whether other grounds existed.

5. The decision of the Appellate Tax Board is affirmed. The State tax commission is to have costs of the appeal to this court.

*So ordered.*