******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ALICO, LLC, ET AL. *v.* TOWN OF SOMERS ET AL.
(SC 20748)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Suarez, Js.

*Syllabus*

The plaintiffs, A Co. and its sole member, N, appealed to the trial court
from the decision of the board of assessment appeals of the defendant
town of Somers, Connecticut, which upheld property tax assessments
on two motor vehicles owned by A Co. A Co. is a Massachusetts company
with offices in Ludlow, Massachusetts, and in Somers. N and his wife,
who works for A Co., drive the vehicles every day and garage the vehicles
at their home in Somers. Until 2021, both vehicles were registered in
Massachusetts, and A Co. paid taxes on them in that state. In 2018, the
defendant town's tax assessor became aware of the presence of the
vehicles in the town, and he retroactively placed them on the town's
2017 and 2018 grand lists and assessed motor vehicle property taxes
on N individually pursuant to the statute (§ 12-71 (f)) that, inter alia,
authorizes a Connecticut municipality to assess property taxes on any
motor vehicle that, in the normal course of operation, most frequently
leaves from and returns to that municipality. N appealed the assessments
to the board of assessment appeals, which altered the 2017 and 2018
grand lists to reflect that A Co. was the owner of the vehicles but
otherwise upheld the assessments. A Co. then appealed the assessments
to the board, which again upheld the assessments. Thereafter, the plain-
tiffs appealed to the trial court, seeking, inter alia, a judgment declaring
that the assessments were unconstitutional in light of federal jurispru-
dence pertaining to the dormant commerce clause under the United
States constitution. The plaintiffs argued that, because the vehicles were
used in interstate commerce and subject to taxation in Massachusetts,
the vehicles impermissibly were subjected to double taxation under
§ 12-71 (f). The trial court denied the plaintiffs' request for a declaratory
judgment, concluding that § 12-71 (f) did not discriminate against inter-
state commerce and that any double taxation on the vehicles was not
the result of a discriminatory tax scheme but, rather, was caused by
the plaintiffs' own business decisions. On appeal, the plaintiffs renewed
their claim that the taxation of A Co.'s vehicles pursuant to § 12-71 (f)
violated the dormant commerce clause.

*Held* that the motor vehicle property tax authorized by § 12-71 (f) is a valid,
nondiscriminatory tax that does not violate the dormant commerce
clause, and, accordingly, this court affirmed the trial court's judgment:

Because § 12-71 (f) is facially neutral, this court applied the test set forth
in *Complete Auto Transit, Inc.* v. *Brady* (430 U.S. 274) for determining
the constitutionality of a state tax that is facially neutral but has the
practical effect of imposing a burden on interstate commerce that is
disproportionate to its legitimate benefits, under which the tax will be
sustained if it (1) is applied to an activity that has a substantial nexus
with the taxing state, (2) is fairly apportioned, (3) does not discriminate
against interstate commerce, and (4) is fairly related to the services
provided by the state.

Insofar as the plaintiffs conceded that § 12-71 (f) satisfied the first and
fourth prongs of the *Complete Auto Transit, Inc.* test, and because they
advanced the same claim with respect to both the second and third
prongs, this court limited its analysis to the second prong and applied
the internal consistency test for determining whether a tax has been fairly
apportioned, pursuant to which a court determines whether interstate
commerce would be placed at a disadvantage if every state imposed the
same tax law as the law under review.

In the present case, it was clear from the statutory scheme that, if every
state adopted a tax scheme identical to that of § 12-71 (f), a vehicle
would be taxed by only one state because a vehicle cannot, in the normal
course of operation, most frequently leave from and return to more than

one state, and, thus, if Massachusetts had a tax scheme identical to that of § 12-71 (f), A Co. would owe no taxes to Massachusetts, despite being incorporated in that state and registering its vehicles there, as it was undisputed that A Co.'s vehicles most frequently left from and returned to Connecticut.

Moreover, contrary to the plaintiffs' claim that § 12-71 (f) is internally inconsistent insofar as it does not provide for a credit for the taxes that A Co. pays to Massachusetts, the provision of tax credits saves a tax scheme from a commerce clause challenge only if the tax scheme is internally inconsistent, and this court determined that § 12-71 (f) presents no risk of multiple taxation and, thus, passes the internal inconsistency test.

Furthermore, there is a distinction between discriminatory tax schemes that violate the commerce clause and double taxation that results only from the interaction of two different but nondiscriminatory tax schemes, and, to the extent that A Co. pays multiple taxes on its vehicles as a result of its decision to register its vehicles in Massachusetts and to garage them in Connecticut, that double taxation is the result of the combined effect of Connecticut's and Massachusetts' different and non-discriminatory tax schemes, one of which taxes vehicles on the basis of their physical location and the amount of time that they are in the state, and the other that taxes vehicles on the basis of their registration in the state.

Argued September 11—officially released December 19, 2023

*Procedural History*

Appeal from the decision of the defendant board of assessment appeals concerning the taxation of certain of the named plaintiff's motor vehicles, brought to the Superior Court in the judicial district of Tolland and transferred to the judicial district of New Britain, Tax Session, where the complaint was withdrawn as to the defendant Clyde G. Knorr, Jr., et al.; thereafter, the case was tried to the court, *Cordani, J.*; judgment sustaining the appeal in part, from which the plaintiffs appealed. *Affirmed.*

*George C. Schober*, for the appellants (plaintiffs).

*James Stedronsky*, with whom, on the brief, was *Carl Landolina*, for the appellees (named defendant et al.).

*Opinion*

ALEXANDER, J. General Statutes § 12-71 (f) (1)[1] authorizes Connecticut towns to assess property taxes on any motor vehicles that, in the normal course of operation, most frequently leave from and return to their towns. The sole issue presented by this appeal is whether the dormant commerce clause of the United States constitution precludes the named defendant, the town of Somers (town),[2] from taxing vehicles that are owned by a Massachusetts company and registered in Massachusetts, but leave from and return each day to Somers. The plaintiffs, Alico, LLC (Alico), and Helder Nunes, appeal[3] from the judgment of the trial court denying their request for a judgment declaring that the tax is unconstitutional because it impermissibly subjects the vehicles to double taxation. We affirm the judgment of the trial court.

The trial court found the following relevant facts. Helder Nunes is the sole member of Alico, a Massachusetts landscape construction company operating in several states, with offices in Ludlow, Massachusetts, and Somers. Helder Nunes' wife, Kari Nunes, also works for the company. Alico owns two vehicles for use in its business—a 2017 Chevrolet Silverado and a 2017 Cadillac Escalade. The vehicles are driven daily by the Nuneses, who garage them each evening at their home in Somers. Until 2021, both vehicles were registered in Massachusetts, and Alico paid taxes on them to that state.[4]

In 2018, the town's tax assessor became aware of Alico's vehicles, prompting him to retroactively place them on the town's 2017 and 2018 grand lists and to assess personal property taxes on Helder Nunes individually, even though the vehicles are owned by Alico. The tax assessor also assessed a 25 percent penalty on Helder Nunes individually for Alico's failure to include the vehicles on its personal property declarations.[5] Helder Nunes appealed to the defendant Board of Assessment Appeals of the Town of Somers (board), which altered the 2017 and 2018 grand lists to reflect Alico as the owner of the vehicles but otherwise upheld the assessments. Alico appealed the modified assessments to the board, which once again upheld the assessments.

The plaintiffs then appealed to the Superior Court pursuant to General Statutes §§ 12-117a and 12-119. The plaintiffs' three count complaint sought, among other things, a judgment declaring that the assessments were unconstitutional under the dormant commerce clause.[6] See, e.g., *Oklahoma Tax Commission* v. *Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). The plaintiffs argued that the assessments violated that clause because the vehicles were used in interstate commerce and subject to taxation in Massachusetts pursuant to chapter 60A of the Annotated Laws

of Massachusetts, § 1.[7] The court disagreed and concluded that § 12-71 (f) did not discriminate against interstate commerce "but, instead, uniformly taxes the regular, repeated presence of . . . motor vehicles within the . . . taxing jurisdiction." The court further determined that the tax was fairly related to the benefits provided by the town and that it was "fairly apportioned because it is directly tied to the activities of the motor vehicles within the [town]." The court noted that § 12-71 (f) is qualitatively different from the tax imposed by Massachusetts, which is an excise tax levied on the privilege of registering a vehicle in that state. Finally, the court observed that the plaintiffs "had the free choice to determine where the motor vehicles would be registered and where they would be stored, garaged, and used" such that, to the extent the vehicles were subject to double taxation, it was not the result of a discriminatory tax scheme but, rather, was caused by the plaintiffs' own business decisions.

On appeal, the plaintiffs renew their claim that the inclusion of Alico's vehicles on the town's grand list pursuant to § 12-71 (f) violates the dormant commerce clause because the vehicles are used in interstate commerce and Alico pays taxes on them to the state of Massachusetts. We agree with the defendants that § 12-71 (f) is a valid, nondiscriminatory state tax that does not in any way violate the dormant commerce clause.[8]

Because a challenge to the constitutionality of a statute presents a question of law, our review is plenary. See, e.g., *MERSCORP Holdings, Inc.* v. *Malloy*, 320 Conn. 448, 459 n.6, 131 A.3d 220, cert. denied, 580 U.S. 959, 137 S. Ct. 372, 196 L. Ed. 2d 291 (2016). A validly enacted statute carries a strong presumption of constitutionality, and a party who wishes to challenge it on constitutional grounds bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. See, e.g., *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 405, 119 A.3d 462 (2015).

The commerce clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the Several States, and with the Indian Tribes . . . ." U.S. Const., art. I, § 8, cl. 3. The United States Supreme Court has "consistently held this language to contain a further, negative command, known as the dormant [c]ommerce [c]lause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Commission* v. *Jefferson Lines, Inc.*, supra, 514 U.S. 179. The dormant commerce clause prohibits states "from discriminat[ing] between transactions on the basis of some interstate element. . . . This means, among other things, that a [s]tate may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the [s]tate. . . . Nor may a [s]tate impose a tax [that] discriminates against interstate commerce either by

providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of multiple taxation." (Citations omitted; internal quotation marks omitted.) *Comptroller of the Treasury* v. *Wynne*, 575 U.S. 542, 549–50, 135 S. Ct. 1787, 191 L. Ed. 2d 813 (2015).

In analyzing whether a tax violates the dormant commerce clause, courts look first to see "if it facially discriminates against interstate commerce. . . . In this context, discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. . . . Discriminatory laws motivated by simple economic protectionism are subject to a virtually per se rule of invalidity . . . [that] can . . . be overcome [only] by a showing that the [s]tate has no other means to advance a legitimate local purpose . . . ." (Citation omitted; internal quotation marks omitted.) *MERSCORP Holdings, Inc.* v. *Malloy*, supra, 320 Conn. 474. Alternatively, the dormant commerce clause is violated if a "tax that is facially neutral nevertheless . . . has the practical effect of imposing a burden on interstate commerce that is disproportionate to the legitimate benefits." Id. In this latter scenario, to determine the constitutionality of a facially neutral law, we apply the test in *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977) (*Complete Auto*), under which courts "will sustain a tax against a [c]ommerce [c]lause challenge so long as the tax [1] is applied to an activity with a substantial nexus with the taxing [s]tate, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the [s]tate." (Internal quotation marks omitted.) *Chase Manhattan Bank* v. *Gavin*, 249 Conn. 172, 210, 733 A.2d 782, cert. denied, 528 U.S. 965, 120 S. Ct. 401, 145 L. Ed. 2d 312 (1999).

The plaintiffs do not claim that § 12-71 (f) facially discriminates against interstate commerce, and we agree that the statute is facially neutral. The plaintiffs further concede that § 12-71 (f) satisfies the first and fourth prongs of the *Complete Auto* test. Additionally, although the plaintiffs claim that the statute discriminates against interstate commerce under the third prong of the test, they advance this same argument with respect to the second prong (fair apportionment). We therefore limit our analysis to the second prong of the test.

"Although the meaning of fair apportionment was not precisely defined by *Complete Auto*, the phrase encompasses whether a tax is fairly attributable to an activity carried on in the taxing state. . . . That is to say, to survive constitutional scrutiny, the [challenged] tax must be fairly apportioned to the taxpayer's activities in [the taxing state]." (Citation omitted.) *Barringer* v. *Griffes*, 1 F.3d 1331, 1335 (2d Cir. 1993), cert. denied, 510 U.S. 1072, 114 S. Ct. 879, 127 L. Ed. 2d 75 (1994).

"[A]ny threat of malapportionment [is assessed] by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well."[9] *Oklahoma Tax Commission* v. *Jefferson Lines, Inc.*, supra, 514 U.S. 185. Here, the plaintiffs do not argue that § 12-71 (f) is externally inconsistent,[10] only that it is internally inconsistent. The plaintiffs contend that § 12-71 (f) is internally inconsistent because, if a vehicle leaves from and returns each day to state A but is registered and owned by a company in state B, the company would owe taxes to state A pursuant to § 12-71 (f) (4), and it would also owe taxes to state B pursuant to § 12-71 (f) (3) (A). We disagree.

"A failure of internal consistency shows as a matter of law that a [s]tate is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one [s]tate would place interstate commerce at the mercy of those remaining [s]tates that might impose an identical tax." Id. "This test, which helps courts identify tax schemes that discriminate against interstate commerce, looks to the structure of the tax at issue to see whether its identical application by every [s]tate in the [u]nion would place interstate commerce at a disadvantage as compared with commerce intrastate." (Internal quotation marks omitted.) *Comptroller of the Treasury* v. *Wynne*, supra, 575 U.S. 562.

Section 12-71 (f) (1) provides in relevant part that "property subject to taxation under this chapter shall include each registered and unregistered motor vehicle . . . that, in the normal course of operation, most frequently leaves from and returns to . . . a town in this state . . . ." Thus, § 12-71 (f) (1) only taxes vehicles that, in the normal course of operation, most frequently leave from and return to a town in this state. Section 12-71 (f) (3) (A), in turn, addresses how to determine the tax "situs" for these vehicles. It provides in relevant part: "[A]ny motor vehicle . . . registered in this state subject to taxation in accordance with the provisions of this subsection shall be set in the list of the town where such vehicle in the normal course of operation most frequently leaves from and returns to . . . . It shall be presumed that any such motor vehicle . . . most frequently leaves from and returns to . . . the town in which the owner of such vehicle resides, unless a provision of this subsection otherwise expressly provides. . . ." General Statutes § 12-71 (f) (3) (A).

Finally, § 12-71 (f) (4) addresses the method for determining the tax situs of vehicles that are owned by nonresidents. It provides in relevant part: "Any motor vehicle owned by a nonresident of this state shall be set in the list of the town where such vehicle in the normal course of operation most frequently leaves from and returns to . . . . If such vehicle in the normal course of operation most frequently leaves from and returns to . . . more than one town, it shall be set in the list

of the town in which such vehicle is located for the three or more months preceding the assessment day in any year . . . ." General Statutes § 12-71 (f) (4).

Contrary to the plaintiffs' assertions, it is clear from the statutory scheme that, if every state adopted a tax scheme identical to § 12-71 (f), a vehicle would be taxed by only one state because a vehicle cannot, in the normal course of operation, most frequently leave from and return to more than one state. Thus, if Massachusetts had a tax scheme identical to § 12-71 (f), Alico would owe no taxes to Massachusetts despite being incorporated in that state and registering its vehicles there because, pursuant to § 12-71 (f) (3) (A), vehicles registered in state B are subject to taxation in state B only if, in the normal course of operation, they most frequently leave from and return to state B. In the present case, it is undisputed that Alico's vehicles most frequently leave from and return to Connecticut (state A).

The plaintiffs contend, nonetheless, that § 12-71 (f) fails the internal consistency test because it does not provide a credit for the taxes that Alico pays to Massachusetts. In support of this contention, the plaintiffs cite two cases in which the United States Supreme Court struck down a tax because it offered no such credit[11] and two other cases in which the court upheld a tax because it did.[12] The plaintiffs further note that the United States Supreme Court "recently reaffirmed the saving nature of tax credits" in *Comptroller of the Treasury* v. *Wynne*, supra, 575 U.S. 568, in which the court observed that "Maryland could remedy the infirmity in its tax scheme by offering, as most [s]tates do, a credit against income taxes paid to other [s]tates. . . . If it did, Maryland's tax scheme would survive the internal consistency test and would not be inherently discriminatory." (Citation omitted.) The plaintiffs' reliance on the cited cases is misplaced because, as the cases themselves reveal, the saving grace of tax credits comes into play under the commerce clause only if the tax scheme *needs* saving, which occurs only if the statute is internally inconsistent, meaning that, if every state were to apply it, it would result in multiple taxation. As we explained, however, § 12-71 (f) presents no such risk of multiple taxation.[13]

The fact that Alico is subject to multiple taxation as a result of its decision to register its vehicles in Massachusetts and to garage them in Somers does not render § 12-71 (f) discriminatory.[14] See, e.g., *Chase Manhattan Bank* v. *Gavin*, supra, 249 Conn. 211 ("not all risks of multiple taxation run afoul of the dormant commerce clause, because it is not the purpose of the clause to relieve those engaged in interstate commerce from bearing their fair share of state tax burdens"). In *Wynne*, the United States Supreme Court drew a "critical distinction . . . between *discriminatory* tax schemes [that violate the commerce clause] and double taxation

that results only from the interaction of two different but nondiscriminatory tax schemes." (Emphasis added.) *Comptroller of the Treasury* v. *Wynne*, supra, 575 U.S. 566. The court explained that, "[b]y hypothetically assuming that every [s]tate has the same tax structure, the internal consistency test allows courts to isolate the effect of a . . . [s]tate's tax scheme. This is a virtue of the test because it allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other [s]tates, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes. . . . The first category of taxes is typically unconstitutional; *the second is not.*" (Citations omitted; emphasis added.) Id., 562; see also *Moorman Mfg. Co.* v. *Bair*, 437 U.S. 267, 277, 98 S. Ct. 2340, 57 L. Ed. 2d 197 (1978) ("[e]ven assuming some [taxation] overlap[s], [the court] could not accept [the] appellant's argument that Iowa, rather than Illinois, was necessarily at fault in a constitutional sense"); *Moorman Mfg. Co.* v. *Bair*, supra, 277 n.12 ("The simple answer . . . is that whatever [tax] disparity may . . . [exist between the Iowa and Illinois income tax schemes, it] is not attributable to the Iowa statute. It treats both local and foreign concerns with an even hand; the alleged disparity can only be the consequence of the combined effect of the Iowa and Illinois statutes, and Iowa is not responsible for the latter." (Emphasis omitted.)).

Thus, to the extent Alico pays multiple taxes on its vehicles, it is because of the combined effect of Connecticut's and Massachusetts' different and nondiscriminatory tax schemes—one of which taxes vehicles on the basis of their physical location and the amount of time that they are in the state, and the other that taxes vehicles on the basis of their registration in the state.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Although § 12-71 has been amended since the events at issue in this appeal; see Public Acts 2023, No. 23-204, § 215; Public Acts 2022, No. 22-118, § 503; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The Board of Assessment Appeals of the Town of Somers (board), Clyde G. Knorr, Jr., Walter E. Topliff, Jr., Francis W. Devlin, Jr., George J. Roberts, Jr., and Donald W. Gaskell were also named as defendants. The complaint was subsequently withdrawn as to the individual defendants. For convenience, we refer to the town and the board collectively as the defendants and individually by name when appropriate.

[3] The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Alico registered the Chevrolet Silverado in Connecticut in August, 2021. At the time of the trial court's judgment, however, the Cadillac Escalade was still registered in Massachusetts.

[5] Alico subsequently listed the two vehicles on its 2019 personal property declaration with a notation that it paid taxes on the vehicles in Massachusetts. Alico did not file a personal property declaration in any other year

for which it was assessed penalties.

[6] Counts one and two of the complaint alleged wrongful assessment and excessive assessment, respectively. The trial court concluded that the vehicles were subject to taxation under § 12-71 (f) but that the valuations utilized by the tax assessor were "manifestly excessive," and the court reduced them. The court also reversed the 25 percent tax penalty that the assessor had imposed on Alico for the 2019 tax year but upheld the other penalties. The defendants have not challenged the court's judgment with respect to these issues.

[7] Chapter 60A of the Annotated Laws of Massachusetts, § 1, provides in relevant part: "Except as hereinafter provided, there shall be assessed and levied in each calendar year on every motor vehicle . . . registered under chapter ninety, for the privilege of such registration, an excise measured by the value thereof, as hereinafter defined and determined, at the rate of twenty-five dollars per thousand of valuation. . . ."

[8] The defendants argue that § 12-71 (f) cannot violate the dormant commerce clause as a matter of law because it does not impose a tax on commerce at all but, instead, assesses a property tax solely on the basis of where a vehicle is located a majority of the time (i.e., most frequently leaves from and returns to). This argument has previously been rejected by the United States Supreme Court. See *Camps Newfound/Owatonna, Inc.* v. *Harrison*, 520 U.S. 564, 574–75, 117 S. Ct. 1590, 137 L. Ed. 2d 852 (1997) ("The [t]own also argues that the dormant [c]ommerce [c]lause is inapplicable because a real estate tax is at issue. We disagree. A tax on real estate, like any other tax, may impermissibly burden interstate commerce. . . . To allow a [s]tate to avoid the strictures of the dormant [c]ommerce [c]lause by the simple device of labeling its discriminatory tax a levy on real estate would destroy the barrier against protectionism that the [c]onstitution provides." (Citation omitted.)).

[9] A court will consider the internal structure and isolated effect of a tax to determine whether it is internally consistent; see *Comptroller of the Treasury* v. *Wynne*, supra, 575 U.S. 562; whereas, to assess external consistency, the court will look to the "economic justification for the [s]tate's claim [on] the value taxed . . . ." *Oklahoma Tax Commission* v. *Jefferson Lines, Inc.*, supra, 514 U.S. 185.

[10] The plaintiffs argue that, because § 12-71 (f) is not internally consistent, the external consistency portion of the fair apportionment test "is not relevant." Therefore, we do not address this issue.

[11] See *Comptroller of the Treasury* v. *Wynne*, supra, 575 U.S. 568; *Tyler Pipe Industries, Inc.* v. *Dept. of Revenue*, 483 U.S. 232, 246, 248–49, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987).

[12] See *Goldberg* v. *Sweet*, 488 U.S. 252, 264–65, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989); *D.H. Holmes Co., Ltd.* v. *McNamara*, 486 U.S. 24, 31, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988).

[13] The plaintiffs argue that § 12-71 (f) violates the dormant commerce clause because it is an ad valorem tax, and the Massachusetts tax, although labeled an "excise" tax, is a functionally identical ad valorem tax. In making this argument, the plaintiffs rely on a line of cases holding that courts, when evaluating the constitutionality of a tax scheme under the dormant commerce clause, must consider the "practical operation" of a tax rather than the name ascribed to it by the legislature. See, e.g., *Nelson* v. *Sears, Roebuck & Co.*, 312 U.S. 359, 363, 61 S. Ct. 586, 85 L. Ed. 888 (1941) ("[i]n passing on the constitutionality of a tax law, [courts] are concerned only with its practical operation, not its definition or the precise form of descriptive words [that] may be applied to it" (internal quotation marks omitted)). These cases do not advance the plaintiffs' argument, however, because we are not passing on the constitutionality of chapter 60A of the Annotated Laws of Massachusetts, § 1. Our only concern is the constitutionality of § 12-71 (f). We also agree with the trial court's observation that the tax authorized by the Massachusetts statute is distinct from the property tax authorized by § 12-71 (f), not only in name, but in its purpose and character as well. Chapter 60A of the Annotated Laws of Massachusetts, § 1, authorizes the assessment of a yearly tax on each vehicle registered in the state of Massachusetts "for the privilege of such registration . . . ." Although the tax is calculated on the basis of the value of the vehicle, namely, a percentage of the manufacturer's suggested retail price at a rate of twenty-five dollars per thousand dollars; Mass Ann. Laws c. 60A, § 1 (LexisNexis Cum. Supp. 2023); that fact alone does not negate its character as an excise tax. See *Associated Industries of Massachusetts, Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 667, 393 N.E.2d 812 (1979) ("[t]he fact that a tax on the

exercise of a privilege is adjusted in whole or in part to property values does not deprive the tax of its character as an excise; taxes so adjusted have been upheld repeatedly as excises"). Courts repeatedly have construed chapter 60A, § 1, as an excise tax. See, e.g., *In re Appugliese*, 210 B.R. 890, 897 (Bankr. D. Mass 1997) (rejecting debtor's claim that chapter 60A, § 1, operates as property tax); *O'Brien* v. *State Tax Commission*, 339 Mass. 56, 65, 158 N.E.2d 146 (1959) (reviewing legislative history of chapter 60A, § 1, and concluding tax is excise on privilege of registration).

[14] Although the plaintiffs assert in their reply brief that payment of both Massachusetts and Connecticut taxes was unavoidable, we disagree. Chapter 90 of the Annotated Laws of Massachusetts, § 3, permits a Massachusetts corporation to lawfully register its vehicles in another state under the following conditions: "(1) [the corporation] must have a place of business in another [s]tate or foreign country; (2) the vehicle must be a commercial motor vehicle, trailer, or [semitrailer], and must be used in connection with the place of business; (3) the vehicle must be customarily garaged in the jurisdiction in which the place of business is located; and (4) it must be registered there." *Companion* v. *Colombo*, 338 Mass. 620, 623, 156 N.E.2d 692 (1959); see id. (construing requirements of chapter 90 of the Annotated Laws of Massachusetts, § 3). Thus, there is no unavoidable requirement that a Massachusetts corporation register its vehicles in that state.

In the present case, Alico's Chevrolet Silverado was originally registered as a commercial vehicle in Massachusetts and was subsequently registered in Connecticut, thereby avoiding the excise tax under chapter 60A of the Annotated Laws of Massachusetts, § 1. However, the Cadillac Escalade, which was registered in Massachusetts as a passenger vehicle, is still registered in Massachusetts. These conditions on registering a corporation's vehicles outside of Massachusetts do not render the plaintiffs' decisions to purchase a passenger vehicle, to register it in Massachusetts, and to garage it in Connecticut involuntary. The plaintiffs could have avoided the Massachusetts excise tax by purchasing only commercial vehicles for use in connection with their business. Alternatively, the plaintiffs could have avoided the tax in Connecticut by not garaging the vehicles in Somers.

---