SHINNECOCK, INC.[1] *vs.* STATE TAX COMMISSION.

Suffolk.     April 5, 1966. — April 29, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Vessel excise.     *Words,* "Interest."

History of G. L. c. 63, § 67, as amended, summarized.     [650–652]
In determining the value of the "interest" of a corporation in a vessel
upon which an excise tax is assessed under G. L. c. 63, § 67, as amended
through St. 1956, c. 550, § 12, the balance due on any valid mortgage on
the vessel must be deducted from the fair market value of the vessel.
[653–654]

APPEAL from a decision by the Appellate Tax Board.

*M. Vance Munro* for the appellant.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for
the appellee.

CUTTER, J.     This is an appeal from a decision of the Ap-
pellate Tax Board which sustained the commission's im-
position of an excise under G. L. c. 63, § 67 (as amended
through St. 1956, c. 550, § 12).[2]     The excise was required

---

[1] Three appeals by other corporations involve the same question of law.     The
parties have stipulated that these will be governed by the order of the full
court in the present case.

[2] Section 67, as amended, reads in part, ''The commissioner shall annually
assess as of the last day of the taxable year . . . an excise tax upon the
*interest* of every [Massachusetts] corporation . . . having a place of business
therein, *in any . . . vessel* which has, during the period of its business in the
year preceding such day, been engaged in interstate or foreign carrying trade
or engaged exclusively in fishing and documented and carrying 'papers' under
the laws of the United States, which tax shall be one third of one per cent
upon the *value of such interest* as determined by him.     Such tax shall become
due and shall be collected at the same time and in the same manner as other
taxes assessed to such corporations.     The president and treasurer of every
such corporation owning *an interest* in any such . . . vessel shall, on or before
the fifteenth day of the third month following the close of each taxable year,
make a return to the commissioner . . . setting forth . . . the name of the
. . . vessel, *the interest of the corporation therein, and the value of such
interest.*     If the commissioner is satisfied of the truth of the return he shall
deduct said value [A] *from the value of its corporate excess as determined by
him, if it is taxable under sections thirty to thirty-eight C, inclusive, or* from
the value of its corporate franchise, if it is taxable under section fifty-eight
. . .'' (emphasis supplied).     The words in italics following the bracketed
letter [A] were struck from § 67 by St. 1963, c. 365, § 2, as a consequence of
the repeal by St. 1962, c. 756, § 5, of the ''corporate excess'' measure of the
excise theretofore imposed by G. L. c. 63, § 32.     See 1963 House Doc. No. 101,
p. 4; 1963 House Bill No. 106.

to be measured by the appellant's "interest" in the M.V. "Shinnecock" (the vessel). The board based its findings and opinion on the pleadings, the stipulation of certain facts, and some documentary evidence.

The appellant is a Massachusetts corporation subject to the business corporation excise (G. L. c. 63, § 30, as amended through St. 1956, c. 550, §§ 1–3, and § 32, as amended through St. 1957, c. 577, § 1) and to the vessel excise (c. 63, § 67). On January 8, 1959, the appellant filed its business corporation excise return and its vessel excise return for the taxable year ended October 31, 1958, and paid a vessel excise of $189.73. The appellant included in its vessel·excise return its interest in the vessel at $56,776.13, which was the value of the appellant's equity in the vessel, viz. the original cost ($366,332.44) less the sum of (a) accumulated depreciation ($187,396.31), and (b) the balance payable upon the mortgage of the vessel ($122,160).[3] The commissioner, on November 22, 1961, assessed the appellant's 1958 vessel excise at $596.45, which (after deducting $189.73, theretofore paid) left a balance of $406.72. This balance was caused by the commissioner's determination that the

---

[3] The computation, on the appellant's return, of the "corporate excess" measure of the excise imposed by c. 63, § 32, resulted in a "corporate excess" of zero. In reaching this result, the value of the equity in the vessel ($56,776.13) was one of the items deducted from the value of the capital stock. The balance sheet shown on the return may be summarized.

ASSETS

| Item | | | |
|---|---|---|---|
| 1. | Capital assets — fishing vessel | $366,332.44 | |
| | *less* reserve for depreciation | 187,396.31 | |
| | | | $178,936.13 |
| 6. | Current assets | | 47,468.30 |
| 8. | Total assets | | $226,404.43 |

LIABILITIES

| | | | |
|---|---|---|---|
| 9. | Funded debt (apparently the vessel mortgage) | $122,160.00 | |
| 10. | Current liabilities | 33,692.92 | |
| 11. | Accrued liabilities (unmatured interest) | 3,054.00 | |
| 12. | Total liabilities | | $158,906.92 |
| | Capital stock, surplus and undivided profits | | 67,497.51 |
| | Total of items 9–12 | | $226,404.43 |

value of the appellant's interest in the vessel was $178,936, its full depreciated cost as of October 31, 1958. The commissioner thus wholly disregarded the $122,160 mortgage balance. The vessel "was engaged in interstate or foreign carrying trade or engaged exclusively in fishing and documented . . . under the laws of the United States during the period of its business in the year preceding October 31, 1958." The fair cash value of the vessel on that day was $178,936 and the vessel mortgage ($122,160) was then a valid obligation.

The appellant filed two requests for rulings, each in substance that, for the purpose of the excise imposed by c. 63, § 67, the balance of any valid mortgage encumbrance upon the vessel as of October 31, 1958, must be deducted from the vessel's fair market value in determining the measure of the excise. The board denied these requests.

What is now § 67 has had a long history. See Nichols, Taxation in Massachusetts (3d ed.) 263–264, 642–644, and Pike and Cohen Supp. p. 28. See also *Opinion of the Justices,* 195 Mass. 607, 611; *Opinion of the Justices,* 324 Mass. 724, 731–732. Statute 1881, c. 284, § 1, provided that certain vessels would not be taxed as personal estate of the owner, but that "the *net* yearly income of such . . . vessels shall be taxed to the . . . owners . . . in their places of residence proportionally to their *interests* therein" (emphasis supplied). By § 3, the statute was not to apply to a vessel unless its owner "shall . . . make a return . . . to the assessors of every town . . . of which the owner of any share or *interest* in such . . . vessel may be a resident . . . which shall set forth the name of such owner, and the name, class, and tonnage of such . . . vessel . . . the share or interest of such owner therein, and the dividends paid him upon his . . . share or interest . . . and such dividends shall constitute the *net yearly income* to be taxed to such owner as provided in this act" (emphasis supplied). General Statutes c. 11, § 4 (1860), had theretofore provided that personal estate "shall, for the purposes of taxation, include . . . vessels." By the 1881 statute, vessels en-

gaged in the foreign carrying trade were instead taxed under that part of .Gen. Sts. c. 11, § 4, which included in personal estate for the purposes of taxation "so much of the income from a profession, trade, or employment, as exceeds the sum of . . . [$600] a year; but no income shall be taxed which is derived from property subject to taxation."

In St. 1881, c. 284, the word "interest" may refer to a portion of the ownership of the vessel (as for example the property of the owner of a fractional part of the vessel) without regard to the effect of any mortgage encumbrance. The whole statutory arrangement, however, strongly suggests that, as to a mortgaged vessel, the measure of the tax or excise would in effect be an equity measure. It will be observed that the tax was on, or measured by, the *net* income in the form of "dividends." These normally would be paid from income remaining after provision for the payment of interest (and perhaps also partial payments of principal) upon the mortgage. Thus, to some degree at least, the measure of the 1881 tax or excise took into account any mortgage and necessarily reflected the equity in the vessel rather than its total market value.

The provisions of St. 1881, c. 284, were continued without change now significant in Pub. Sts. c. 11, §§ 8–10 (1882), and in R. L. c. 12, §§ 7–9 (1902). By St. 1902, c. 374, a new system of taxing vessels in the foreign carrying trade was instituted and St. 1902, c. 375, repealed R. L. c. 12, §§ 7–9, apparently because the repealed sections had been largely, if not entirely, supplanted by the provisions of c. 374. Chapter 374, § 1, provided for an excise "upon the interest of every [Massachusetts] corporation" with a place of business in this State, "in any . . . vessel . . . engaged in the foreign carrying trade" of one third of one per cent "upon the value of such interest." Section 2 required certain returns to be filed and directed the tax commissioner to "deduct . . . [the] value" of the corporation's interest in the vessel "from the fair cash value of the [corporation's] shares . . . as estimated . . . for the purpose of determin-

ing the true value of its corporate franchise under" R. L. c. 14. See §§ 37–42 for the franchise tax on business corporations. Section 3 of St. 1902, c. 374, imposed the excise upon "[p]ersons or partnerships owning an interest in any such . . . vessel," and § 4 repealed so much of R. L. c. 12, § 4, Fourth, as related to a tax on the income of such vessels.

The net effect of the 1902 statute, so far as now pertinent, was to extend the vessel excise to corporations.[4] The history of the 1902 statute shows that the excise was to be imposed as a substitute for the inclusion of the value of the vessels in the value of the corporate shares. That value, of course, however determined, would reflect in major degree the burden of any mortgage encumbrance.[5]

Later revisions of the relevant statutes do not appear to have made substantial changes in the statutory pattern, in respects here material, except as the form of corporate excise taxation has changed over the years. See e.g. St. 1909, c. 490, Part III, §§ 10, 40–43; Report of the Joint Special Committee on Consolidating and Arranging the General Laws (1920), p. 557, note on c. 63, § 67.[6]

The term "interest . . . in any . . . vessel," as used in G. L. c. 63, § 67 (fn. 2), is not free from ambiguity. As suggested earlier, it would be possible to interpret the term restrictively as referring only to the proportionate share of one of several owners of a vessel. The term, however,

---

[4] This was done upon the petition of three citizens (see original petition in the State Archives and 1902 House Bills Nos. 24, 1264) who wished to form a corporation to acquire ships for use in foreign trade and to have the favorable vessel excise applicable to their proposed corporation.

[5] The franchise tax imposed upon domestic corporations by R. L. c. 14, §§ 37–42, was the method then employed of imposing a tax or excise with respect to, or measured by, most of the property (other than real estate and machinery) of such corporations. See *New England & Savannah S.S. Co.* v. *Commonwealth,* 195 Mass. 385, 387, 391. For present statutory provisions exempting from local property taxation most of the property (except real estate and machinery) of domestic business corporations, see G. L. c. 59, § 5, Sixteenth (2), as amended through St. 1957, c. 541.

[6] See also the amendment of G. L. c. 63, § 67, by St. 1951, c. 641, § 16, which authorized (for the purpose of c. 63, § 52A, imposing a net income franchise tax on certain utility corporations) the deduction from such a utility's taxable net income of any income "received on its interest in any such . . . vessel." This provision suggests that the term "interest" was intended to mean an equity interest, for interest payments on mortgage encumbrances would tend to reduce income.

may fairly be interpreted broadly enough to include also a reference (where a vessel is encumbered by a mortgage) at least to the beneficial equity interest of the mortgagor. The broader interpretation appears to us to be the more reasonable one. The word "interest" may refer to a variety of forms of ownership. If it had been intended that the measure of the excise with respect to a mortgaged vessel include (as a unit) both the interest of the mortgagor and that of the mortgagee, it would have been more natural to refer in § 67 to the value of the vessel itself, and to shares in its ownership, rather than to the "value of such interest."

Some indications of legislative intention are given by the history, already summarized, of the pertinent statutory provisions applicable during 1958, and predecessor statutes. These indications point, we think, to a legislative purpose to measure the excise upon a taxed mortgagor corporation by the value of its equity interest in each vessel subject to the excise. The excise, in its different forms over the years, certainly at all times has been designed to reduce and limit the direct and indirect tax burden upon vessels used in foreign and interstate trade and fishing. It has also been designed to exclude from the "corporate excess" measure of the excise imposed by c. 63, § 32, and from the share value measure of its franchise tax predecessors, the value of the same interest which was to be used as the measure of the excise under § 67. Under the 1958 form of the statutes, because the mortgage on the vessel would be taken into account as a liability (see fn. 3) in determining the appellant's "corporate excess," only the value, if any, of the equity in the vessel would become a part of the "corporate excess" measure of the excise imposed by § 32, prior to the deduction of the value of the interest in the vessel, as then permitted by § 67. We are of opinion that only this equity value should be deducted from the value of the corporate excess by virtue of the deduction provision of § 67. See fn. 2, sentence containing the material following point [A]. The word "interest," where it is used in § 67 to describe the measure of the vessel excise, must have the

same meaning as when used to define the deduction. This "interest" we hold to be the value of the equity in the vessel after taking into account valid mortgages.

The result we reach is consistent with the use of the word "interest" in other somewhat comparable provisions of the tax statutes. See e.g. G. L. c. 59, §§ 12, 14 (assessment of mortgaged land); c. 65, § 1, as amended (including certain property "and any interest therein" within the measure of the inheritance tax). See also *McCurdy* v. *McCurdy*, 197 Mass. 248, 252; *Assessors of Boston* v. *Jakes*, 341 Mass. 136, 138. Cf. G. L. c. 59, § 19, which expressly provides for local taxation of mortgaged personal property as a unit unless a mortgagee is in possession. Also, any doubt whether more than the appellant's equity should be included within the measure of the excise must be resolved in favor of the appellant under the usual principle requiring strict construction of taxing statutes. *Cabot* v. *Commissioner of Corps. & Taxn.* 267 Mass. 338, 340. *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 447–448. *State Tax Commn.* v. *Gray,* 340 Mass. 535, 540.

The appellant's requests for rulings should have been given. The sum of $406.72 of the 1958 excise assessment, made in 1961 (i.e. the balance above $189.73 paid in 1959), was not warranted by § 67. The additional excise must be refunded with interest.

The decision of the Appellate Tax Board is reversed. This case and the other cases which by stipulation are to be governed by this case are to be remanded to the board for further proceedings consistent with this opinion. The several appellants are to have costs of appeal.

*So ordered.*