Associated Industries of Massachusetts, Inc. &
others[1] vs. Commissioner of Revenue & others.[2]

Suffolk.    June 28, 1979. — August 3, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, & Wilkins, JJ.

*Taxation*, Real estate tax: assessment, exemption; Public utility
excise. *Constitutional Law*, Taxation, Contingent legislation, Equal
protection of laws.

Statute 1978, c. 580, the Classification Act, was not rendered invalid
by the fact that it was enacted prior to ratification of a constitution-
al amendment authorizing classification of real property according
to use and made conditional upon such ratification. [662-663]
A provision of St. 1978, c. 580, the Classification Act, making fair cash
valuation of real property a prerequisite to classification under the
Act does not violate Part II, c. 1, § 1, art. 4, of the Constitution of
the Commonwealth or the equal protection guaranty. [663-666]
A provision of St. 1978, c. 580, the Classification Act, which exempts
utility companies from real and personal property tax and instead
imposes on them an excise, does not create a fifth class of real
property in violation of Part II, c. 1, § 1, art. 4, of the Constitution
of the Commonwealth. [666-668]
A provision of St. 1978, c. 580, the Classification Act, which grants a
$5,000 exemption from property tax for each residential parcel and
defines parcel so as to include a condominium unit in a building but
not to include a rental unit in a building under single ownership,
does not violate Part II, c. 1, § 1, art. 4, of the Constitution of the
Commonwealth or art. 10 of the Declaration of Rights. [668-670]

Civil action commenced in the Supreme Judicial
Court for the county of Suffolk on February 13, 1979.
The case was reported by *Quirico, J.*

[1] Esleeck Manufacturing Company, Inc., Wes-Pine Millwork, Inc.,
James and Charlotte H. Lizak, Eden Tresses, Inc., and Richard Blau-
velt.

[2] The Department of Revenue and the towns and boards of assessors
of Hanover, Warren, and Montague.

*Robert J. McDonough (Peter L. Resnik* with him) for the plaintiffs.

*S. Stephen Rosenfeld,* Assistant Attorney General (*James A. Aloisi,* Jr., Assistant Attorney General, with him) for the defendants.

KAPLAN, J. This action attacking the constitutionality of the Classification Act (St. 1978, c. 580) is before us on reservation and report, without decision, by a single justice of this court, certain facts being stipulated. The full bench heard argument on June 28, 1979. Upon representations of the parties that, in the light of legislative calendars and necessities, a speedy decision was urgently required, we entered an order, after deliberation, on July 6, declaring rights in favor of the defendants, that is, sustaining the constitutionality of the enactment against the specific claims of invalidity urged by the plaintiffs. (The text of the order appears at note 25.) We stated at the time that an opinion would follow.

1. *Statement of the Case.* (a) *Constitution and statute.* Part II, c. 1, art. 4, of the Constitution of the Commonwealth has long empowered the General Court "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth." Amendment art. 112, ratified by the people on November 7, 1978, added the words: "except that, in addition to the powers conferred under Articles XLI and XCIX of the Amendments,[3] the general court may classify real property according to its use in no more than four classes and assess, rate and tax such property differently in the classes so established, but proportionately in the same class, and except that reasonable exemptions may be granted." Before the amendment, art. 4 had been construed to prohibit "the imposition of taxes upon one class of persons or

---

[3] These articles confer authority on the General Court with respect to taxation of wild or forest lands (XLI) and agricultural or horticultural lands (XCIX).

property at a different rate from that which is applied to other classes." *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 230 (1961), quoting from *Opinion of the Justices,* 341 Mass. 738, 750 (1960). The municipalities were legally obliged to assess property at fair cash value (see G. L. c. 59, § 38; *Sudbury* v. *Commissioner of Corps. & Taxation,* 366 Mass. 558 [1974]), and each municipality was then to apply to these values a rate chosen to meet its fiscal needs. In fact the obligation of such "100% valuation" of all types of property had been widely disregarded. The 1978 amendment was an expression of the popular dissatisfaction with the tax system, which it modified on the terms above quoted. (Our recent *Opinion of the Justices, post* 802, 802-804 [1979], recounts this background.)

The General Court passed the Classification Act on July 12, 1978, and the Governor approved it on July 24, both in anticipation of the ratification of amend. art. 112. By § 40, the act was to become effective upon the ratification of the amendment in 1978; if the amendment was not so ratified, the act was to be null and void.

Following are salient features of the act. Classification of real property begins on January 1, 1979, but subject to the provision that a municipality may not classify until all real property within its borders has been assessed at its fair cash value and the assessment has been certified by the Commissioner of Revenue. G. L. c. 59A, § 42.[4] Upon certification, the local assessors classify property as residential, commercial, industrial or manufacturing, or open space. § 5. To attain the "taxable valuation" of property in each class, its fair cash value is multiplied by the applicable "classification ratio": 40% for residential, 50% for commercial, 55% for industrial or manufacturing, and 25% for open space (§§ 18-19); and in the case of residential property, by going on to allow a $5,000 exemption for each parcel (§ 17), "parcel" being defined so that

---

[4] Statute 1978, c. 580, § 38, inserted a new G. L. c. 59A, which will be cited herein.

each condominium unit in a building is treated as a parcel, but a rental unit in a building under single ownership is not. The rate of taxation is calculated by dividing the revenue required to be raised by the property tax by the aggregate amount of the taxable valuations, including personal property, which continues to be assessed at its full and fair cash value. We illustrate in the margin how one would compute the effective rates on the fair cash values in the several classes.[5]

The property of electric and gas utility companies receives separate treatment (§ 19A): such companies are exempted from real and personal property tax; instead they pay an excise measured by a formula related to certain property values but not congruent with any formula set out above.

(b) *Parties.* Plaintiffs are properly positioned to raise the various constitutional questions. Associated Industries of Massachusetts, Inc., is a nonprofit Massachusetts corporation composed of some 2,350 industrial and manufacturing companies, most of which own taxable real property in the Commonwealth. Esleeck Manufacturing Company, Inc., and Wes-Pine Millwork, Inc., own property used for manufacture in the towns of Montague and Hanover, respectively. James Lizak and Charlotte H. Lizak own property used for commercial purposes in the town of Warren. Eden Tresses, Inc., leases commercial

---

[5] Eliminating consideration of personal property, suppose a town has $100,000,000 of real property distributed thus: $50,000,000 residential, $25,000,000 commercial, $15,000,000 industrial or manufacturing, and $10,000,000 open space. After applying the classification ratios, the taxable valuations of the latter three classes of property will be, respectively, $12,500,000, $8,250,000, and $2,500,000. If 1,000 units are entitled to the $5,000 residential exemption, the taxable valuation for the first class will be $15,000,000. The total of taxable valuations is $38,250,000. Assume the town desires to raise $1,000,000 from its real property tax. The over-all rate will then be $1,000,000 divided by $38,250,000, or 2.61437%. The effective rates on the full valuations—adjusting for the residential exemption and the various classification ratios—will then be .78431%, 1.304185%, 1.4379035%, and .6535925% for the four classes respectively.

property in Hanover and is obliged by the terms of the lease to pay the taxes on the property. Richard Blauvelt rents a residential apartment in Montague.

Defendants Montague, Hanover, and Warren are among the municipalities that have completed revaluation efforts, and properties there have been assessed at their fair cash valuations as of January 1, 1978. If defendant Commissioner of Revenue certifies that the properties have been so assessed for 1979, defendant boards of assessors of those localities will be authorized and required to classify the real properties pursuant to the Classification Act.

The likely result of classification would be to impose on the commercial and manufacturing or industrial owners represented by the several plaintiffs a larger percentage of the tax levies in their respective municipalities and a larger tax in absolute terms than they have heretofore been obliged to bear.[6] Blauvelt, as a residential tenant, may be favored by classification.[7]

(c) *Constitutional questions presented by plaintiffs.* Is the Classification Act invalid because enacted before the constitutional amendment was ratified? Is it constitutionally permissible for the properties in some municipalities to be taxed on the usage classification basis while the properties in others continue to be taxed on the older basis, a condition created by the provision that the Classification Act takes practical effect in a locality only after it is certified as assessing at fair cash value? Does the excise provision with respect to public utilities

---

[6] The absolute amount of the tax will of course depend on the total revenue needed to be raised by the particular municipality; classification will cause an increase of tax to such owners in absolute terms if that total is kept constant.

[7] After classification residential property in Montague will bear a smaller percentage of the total tax levy. But the record does not clearly show whether implementation of the Classification Act would increase or decrease either Blauvelt's share or his tax burden in absolute terms.

create a fifth, unauthorized class? Is the $5,000 residential exemption fatally discriminatory?

2. *Contingent Legislation.* By § 40 of St. 1978, c. 580, that act, approved by the Governor some three months before the ratification by the people of amend. art. 112, was made conditional upon such ratification.[8] It is contended that there was no constitutional authority to tax real property by usage classification when the General Court passed the statute or the Governor signified his approval of it; hence the statute was then void and must remain so despite the occurrence in fact of the condition of ratification of the constitutional amendment. This seems to us no more than a play on words. One might say with as much justification that there was authority for usage classification at the moment when the statute became practically effective by its own terms. The conditional or contingent route is not closed to the Legislature by any explicit provision of our Constitution[9] or by any implication that we can discern from the framework of the Constitution. Nor is there any substantial reason—any perceived danger or difficulty—that might counsel us to disfavor legislation passed in anticipation of the consummation of a constitutional amendment and postponing its own effectiveness to that event. The overwhelming

---

[8] Section 40 reads: "This act shall take effect upon the ratification at the biennial state election to be held in the year nineteen hundred and seventy-eight of a legislative amendment, entitled, 'Proposal for a legislative amendment to the Constitution authorizing the classification of property according to its use for the purpose of taxation?' This act shall be applicable to property taxes assessed for the fiscal year beginning nineteen hundred and eighty. If such amendment is not ratified this act shall be null and void."

[9] The plaintiffs also speak of an evasion of Parts 1 and 3 of the referendum provisions of amend. art. 48, providing that (with certain exceptions) no law may take effect earlier than ninety days after it has "become a law," in part so that qualified voters may petition during that period for a referendum on the law and a suspension of its operation. Here, however, a period of over ninety days was available after the Classification Act had "become a law" in the technical sense. See *Coyle* v. *Swanson*, 345 Mass. 126 (1962).

majority of the courts that have considered the matter agree that no such reason obtrudes and the legislative procedure is not invalid.[10] There is, indeed, plain purpose and advantage in conditional legislation where the constitutional amendment is not self-executing but requires implementation.

3. *Prerequisite of Fair Cash Valuation.* According to the parties' stipulation, various municipalities have not yet set dates for completing fair cash revaluation and so they will be ineligible for certification under G. L. c. 59A, § 42, for an indeterminate period. In a situation in which some municipalities are certified, and others not, a disparity of tax incidence exists: commercial and industrial or manufacturing properties in a certified municipality bear a larger percentage of the tax levy than those in a municipality not certified, although the properties are equal in value and represent the same percentage of the total taxable valuations. It is argued that the difference of treatment encompasses a violation of art. 4, as amended, as well as of the equal protection guaranty. We do not agree.

---

[10] See *Opinion of the Justices*, 287 Ala. 326 (1971); *Alabam's Freight Co.* v. *Hunt*, 29 Ariz. 419 (1926); *Busch* v. *Turner*, 26 Cal. 2d 817 (1945); *Pratt* v. *Allen*, 13 Conn. 119 (1839); *Henson* v. *Georgia Indus. Realty Co.*, 220 Ga. 857 (1965); *State* v. *Kirkley*, 29 Md. 85 (1868); *State ex rel. State Bldg. Comm'n* v. *Smith*, 335 Mo. 840 (1934); *State ex rel. Woodahl* v. *Straub*, 164 Mont. 141, cert. denied, 419 U.S. 845 (1974); *In re Thaxton*, 78 N.M. 668 (1968); *Fullam* v. *Brock*, 271 N.C. 145 (1967); *Application of Okla. Indus. Fin. Auth.*, 360 P.2d 720 (Okla. 1961); *State* v. *Hecker*, 109 Or. 520 (1923). See also *Druggan* v. *Anderson*, 269 U.S. 36, 39 (1925) (Holmes, J.). Cf. *Neisel* v. *Moran*, 80 Fla. 98 (1919). Compare *Terrebonne Parish School Bd.* v. *St. Mary Parish School Bd.*, 242 La. 667 (1962), with *Etchison Drilling Co.* v. *Flournoy*, 131 La. 442 (1912). Contra, *Opinion of the Justices*, 132 Me. 519 (1933).

It may be noted that St. 1933, c. 376, § 8, made our liquor legislation introduced by that statute contingent on ratification of the Twenty-first Amendment to the Federal Constitution.

Contrary to the plaintiffs' suggestion, ours is not a case in which the Legislature sought to condition a statute upon the approval of the voters. See *Opinion of the Justices*, 160 Mass. 586 (1894).

The plaintiffs appear to assume that the art. 4 require-
ment of proportionality "within the same class" applies
Statewide, but even on that assumption (erroneous, as
will appear) their conclusion would not follow. For the
prerequisite of certification is a means of assuring that
local assessors will comply with the legal requirement of
fair valuation. See G. L. c. 59, § 38. Classification based on
illegal differential assessments might well aggravate
rather than alleviate inequities complained of under the
previous system.[11] The statutory prerequisite is a tempo-
rary expedient[12] and cannot be fairly viewed as creating
an objectionable dual system of taxation.[13]

However, the assumption with which the plaintiffs' ar-
gument appears to begin is incorrect: the proportionality
demanded by art. 4, as amended, is not that taxes must
be so set that properties of a given value and representing
the same percentage of total municipal valuation must
bear the same percentage of the tax levy in all
municipalities of the Commonwealth.

In *Opinion of the Justices, supra* at 812-815, we dealt
with a bill giving each municipality a limited power to allo-
cate the municipal tax levy among the several classes. Em-
phasizing the intensely local character of property tax,[14]
we explained that variations in percentage contributions

---

[11] As the defendants point out, application of the Act in a municipal-
ity with valuations varying from fair cash could have odd conse-
quences: if residential property were assessed at 25% and industrial
or manufacturing at 100%, the Classification Act would result in
taxable valuations, not of 40% and 55% (as specified in the Act), but
of 10% and 55%.

[12] Compare another expedient adopted in *Commonwealth* v. *Ando-
ver, ante* 370, 378-380 (1979) (listing steps that may be taken by the
single justice to compel revaluation).

[13] For similar reasons we reject any suggestion that the prerequisite
here considered creates multiple classes of property beyond the four
allowed. Cf. *Opinion of the Justices, supra* at 806 n.6.

[14] See, e.g., *Opinion of the Justices,* 356 Mass. 751, 755 (1969);
*Northampton* v. *County Comm'rs of Hampshire,* 145 Mass. 108, 111
(1887).

would occur even if assessments were uniform throughout the State; this results from the different mixes of the four classes of property in different municipalities.[15] The present plaintiffs' interpretation of the proportionality requirement would thus invalidate the Classification Act even without the prerequisite of certification. But as we said in that *Opinion*, the proffered interpretation "draws no support from the language of art. 4, its policy, or our prior decisions": because of the different mixes, variations in percentage contributions from one municipality to another "are a necessary product of the classification amendment and the resulting imposition of different rates of tax [i.e., effective rates] on the several classes." *Id.* at 814. The proportionality required by art. 4 is proportionality per class per municipality, and this is achieved as well when some municipalities remain uncertified, as when all have been certified.

Such "inequalities" as may be conceived to arise from the prerequisite of certification are surely not offensive to the equal protection guaranty. For this constitutional purpose, dividing lines fixed by the Legislature in the field of taxation will be respected unless without rational basis. See *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 490-491 (1977), aff'd, 437 U.S. 255 (1978); *Beals* v. *Commissioner of Corps. & Taxation*, 370 Mass. 781, 785 (1976); *Frost* v. *Commissioner of Corps. & Taxation*, 363 Mass. 235, 248, appeal dismissed for want of a substantial Federal question, 414 U.S. 803 (1973).[16] It is enough to say, again, that the distinction taken in

---

[15] For an illustration, see *Opinion of the Justices, supra* at 814 n.17.

[16] Contrast *McCarthy* v. *Jones*, 449 F. Supp. 480 (S.D. Ala. 1978) (distinctions among counties invalidated where no supporting basis shown); *Weissinger* v. *Boswell*, 330 F. Supp. 615 (M.D. Ala. 1971) (same result where State Constitution prohibited classification); *Louisville & N. R.R.* v. *Public Serv. Comm'n of Tenn.*, 249 F. Supp. 894 (M.D. Tenn. 1966), aff'd, 389 F.2d 247 (6th Cir. 1968) (where State Constitution prohibited classification, railroad property could not be singled out for higher assessments).

terms of certification is a quite understandable means of inducing fair cash valuation throughout the Commonwealth.

4. *Excise on Certain Utility Companies.* Section 19A of c. 59A exempts from the tax "[a]ll real and personal property of electric and gas utility companies subject to rate regulation by the department of public utilities or the federal energy regulatory commission . . . ." It goes on to impose on these companies "a local excise for the privilege of doing business in a city or town."

The 1978 amendment of art. 4 makes explicit what was true of the art. 4 provision from the beginning—that it admitted of "reasonable exemptions" from tax as the Legislature might decide.[17] The parties are agreed that, so far as § 19A announces the exemption for utilities, it is valid. There was reasonable occasion for exempting utilities from the general operation of the act, or so the Legislature could find. Personal property is not subject to classification under the act, and that kind of property owned by the utilities would thus be taxed in the same manner as the mass of personal property. But utilities characteristically own very large amounts of personal property. The expected result would be a considerable overtaxation of the utility companies (which in the end would be borne in sizeable part by the consumers of utility services). Hence, it may be surmised, the special treatment accorded electric and gas utilities by the act.

There is also agreement that utility companies are subject to excise for carrying on their business.[18] What the plaintiffs claim, however, is that the excise laid by § 19A is not in truth an excise but a property tax and must be held to create a fifth class of real property in violation of

[17] See G. L. c. 59, § 5; *Opinion of the Justices*, 341 Mass. 760, 774-780 (1960); *Allydonn Realty Corp.* v. *Holyoke Hous. Auth.*, 304 Mass. 288, 289-294 (1939).

[18] See G. L. c. 63, § 52A; *Gleason* v. *McKay*, 134 Mass. 419, 424-425 (1883).

art. 4, as amended. This contention rests essentially on the fact that property values figure in the rather complicated formula by which the excise is calculated. However the formula, in which "net book value" appears prominently, differs materially from the formulas established by the act with respect to the four stated classes of real property, and it extends as well to personal property owned by the utilities.[19] The fact that a tax on the exercise of a privilege is adjusted in whole or in part to property values does not deprive the tax of its character as an excise; taxes so adjusted have been upheld repeatedly as excises.[20] In any doubtful case, the intention of the Legislature, as it may be expressed in part through its characterization of the tax as an excise, deserves judicial re-

[19] The excise is computed by multiplying the current tax rate by the current assessed value of the real and personal property of the utility company. The current assessed value is determined by multiplying the current net book value of such property by an "assessment factor." This factor is equal to the product of two fractions: (AVU ÷ CVU) × (CVN ÷ AVN), where AVU is "actual assessed value for fiscal [1978] ... of all real and personal property of utility companies within the city or town"; CVU is "net book value for fiscal [1978] of all real and personal property of utility companies within the city or town"; CVN is "taxable valuation for fiscal [1978] of all real and personal property of non-utilities within the city or town, determined as though [c. 59A] had been applicable thereto"; AVN is "actual assessed valuation for fiscal year [1978] of all real and personal property of non-utilities within the city or town."

The tendency of the formula, as the parties agree in essence, is to keep the utilities' tax burdens at the 1978 (preclassification) levels, provided the major variables remain constant.

[20] See *Shinnecock, Inc.* v. *State Tax Comm'n*, 350 Mass. 648, 649-654 (1966); *Opinion of the Justices*, 341 Mass. 760, 772-773 (1960); *Opinion of the Justices*, 250 Mass. 591, 600 (1924); *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37, 40-41 (1922); *S.S. White Dental Mfg. Co.* v. *Commonwealth*, 212 Mass. 35, 37-41 (1912), aff'd, 231 U.S. 68 (1913); *Minot* v. *Winthrop*, 162 Mass. 113, 122 (1894); *Brown-Forman Co.* v. *Kentucky*, 217 U.S. 563, 572 (1910). See also G. L. c. 60A, § 1; c. 63, § 67; P. Nichols, Taxation in Massachusetts 15-16 (3d ed. 1938). By contrast, where a levy in operation taxes ownership of property rather than a privilege or activity, "[i]t can not be made an occupation or license tax by calling it so." *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U.S. 288, 294 (1921).

spect, and especially so where the constitutionality of the exaction depends on its proper characterization.[21] On the whole we cannot say that the legislative statement of § 19A is a sham or a mere device or subterfuge for evading a restriction of amended art. 4.[22] In this view we need not reach a possible argument that the conceded legislative power to exempt utility property carries with it the authority to impose any reasonable substitute levy regardless of what it may be called.

5. *Residential Exemption.* According to G. L. c. 59A, § 17, each residential "parcel" is entitled to a $5,000 exemption from property tax. Under G. L. c. 183A, § 14, separate condominium units are considered parcels, whereas separate rental apartment units are not. Thus a building containing, say, four condominium units is entitled to four exemptions of $5,000 each, while an identical building with four apartments receives but one; which leads to an argument that the distinction violates art. 4, as amended, of the Constitution and art. 10 of our Declaration of Rights.[23]

---

[21] See *Opinion of the Justices*, 250 Mass. 591, 597 (1924); *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 527 (1921); *Douglas Aircraft Co.* v. *Johnson*, 13 Cal. 2d 545, 550-551 (1939); *Weaver* v. *Prince George's County*, 281 Md. 349, 356 (1977).

[22] It is objected that the § 19A excise is not really such because: (i) The measure of the tax may be affected by idle property not actually used to do utility business, while remaining unaffected by property used, but leased, not owned; thus the tax loses relation to the activity on which it is supposedly laid. Pretermitting the question whether there would be any strength in the argument if we knew the underlying facts, we simply note that the facts do not appear on this record: for aught that appears, the point may be de minimis. (ii) The tax may work out in such a way that identical utilities might pay different amounts of excise in different municipalities for the privilege of doing business; hence there is a loss of relation, and so forth. But the excise is laid in terms on the privilege of doing business in the particular city or town, and we may refer again to the traditionally localized character of much of the taxation in the Commonwealth. (iii) Various administrative aspects of the tax on utilities are referred by § 19A to the routines regarding property taxes. But that procedural choice is by no means dispositive of the question of the proper characterization of the tax under the constitutional provisions.

[23] Article 10 provides, "Each individual . . . has a right to be protect-

Many decisions give effect to comparable statutory exemptions from tax.[24] The plaintiffs here do not attack the exemption itself, but instead its supposed discriminatory application. They point to *Opinion of the Justices*, 344 Mass. 766 (1962), where a proposed exemption was declared invalid under art. 4. The bill considered there would have granted a $5,000 exemption from property tax to residential property owned by residents of the Commonwealth, "provided that such property is occupied in good faith by such person or persons as his domicile." *Id.* at 767. The Justices said the exemption would discriminate against rental property and rent payers and also "against all nonresidents and corporate owners as well as individual owners of real estate not occupied by them." *Id.* at 769. Whatever the strength of that *Opinion*, it does not touch the present case where none of the invidious qualifications is present. Under the present statute the exemption is applicable to all residential property: it is immaterial that the owner rents his property instead of occupying it, is a corporation, or resides outside the Commonwealth.

---

ed . . . in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute *his share* to the expense of this protection . . ." (emphasis supplied). We have said that the words "his share" "forbid the imposition upon one taxpayer of a burden relatively greater or relatively less than that imposed upon other taxpayers." *Opinion of the Justices*, 332 Mass. 769, 787 (1955). As so interpreted, art. 10, like art. 4, must be regarded as qualified by art. 112, as amended.

[24] See *Weinstock* v. *Hull*, 367 Mass. 66, 68, appeal dismissed, 423 U.S. 805 (1975) (household furniture and effects); *Opinion of the Justices*, 335 Mass. 771 (1957) (property of privately owned airports); *Cabot* v. *Assessors of Boston*, 335 Mass. 53 (1956) (property of parking garage); *Assessors of Boston* v. *Metropolitan Life Ins. Co.*, 320 Mass. 559 (1947) (property of foreign life insurance company); *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411 (1940) (charitable corporation); *Opinion of the Justices*, 270 Mass. 593 (1930) (exemptions from income tax); *Opinion of the Justices*, 261 Mass. 523, 546 (1927) (specified securities); G. L. c. 59, § 5.

Plaintiffs' real quarrel is with the differential treatment of tenancies and condominiums but there are substantial differences in the two residential forms. There is in fact separate ownership of condominium units (often with mortgage financing), and a building so disposed will generally have a higher value than a similar building with rental units, with advantage to the local tax base. See Roy, Real Estate Tax Assessments on Condominium Units, 23 B.B.J. 6 (May, 1979). We cannot say that the distinction taken by the Legislature in spelling out the residential exemption was beyond the bounds of reason. Cf. *Newhall* v. *Assessors of Brookline,* 329 Mass. 100 (1952).

A rescript will issue corresponding to the subjoined order previously entered.[25]

---

[25] "It is DECLARED AND ADJUDGED, in favor of the defendants, that St. 1978, c. 580, entitled, 'An Act providing for taxation of real property by usage classification' (popularly known as the Classification Act) is not rendered unconstitutional in whole or in part by reason of (1) the enactment of the statute before the ratification of the pertinent constitutional amendment; (2) the requirement of the statute that taxation of real property by usage classification be implemented in those cities or towns certified as assessing real property at full value, while other cities or towns not so certified continue to operate under the unclassified taxation system; (3) the provision for exemption of electric and gas utilities from the property taxation, and their taxation on a different basis called an 'excise'; and (4) the allowance by the statute of a $5,000 exemption for each parcel of residential property, while defining condominium units, but not rental units, as such parcels."