BEATRICE MACIOCI & others[1] vs. COMMISSIONER OF REVENUE
& others[2]
(and ten companion cases).

Suffolk.    March 6, 1986. — November 24, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Real estate tax: assessment, abatement, classification of property,
void tax. *Appellate Tax Board. Jurisdiction*, Appellate Tax Board.

Where the foundational requirement of full and fair cash valuation of real
estate in the city of Fitchburg for fiscal years 1981 and 1982 had not
been met, certification by the Commissioner of Revenue that Fitchburg
was qualified to implement differential taxation for the years in question
was improper and, consequently, Fitchburg's imposition of differential
taxation for 1981 and 1982 was invalid. [598-600]
On appeal to this court after proceedings seeking real estate tax abatements
based on the city of Fitchburg's invalid imposition of differential taxation
for fiscal years 1981 and 1982, it was held that, inasmuch as G. L.
c. 59, §§ 64 and 65, were not limited to granting relief from dispropor-
tionate or excessive valuations of property for tax purposes, but also
provided a remedy for the imposition of taxes that were illegally dispro-
portionate because of the application of unequal rates, plaintiffs who
had initiated proceedings raising the classification issue before the Ap-
pellate Tax Board were entitled to abatements for the years in question.
[600-601]
In proceedings seeking real estate tax abatements based on the city of
Fitchburg's invalid imposition of differential taxation for fiscal 1981
and fiscal 1982, this court was of opinion that the abatements to which
the plaintiffs were entitled should be based on the average municipal
rate, and should not, as contended by the taxpayers, reflect the city's
failure to apply available free cash to reduce the fiscal 1981 tax levy as
required by St. 1979, c. 151, §§ 12A and 16. [601]
In proceedings seeking real estate tax abatements on the ground that every
property in a city was assessed excessively because available free cash
was not applied to reduce the fiscal 1981 tax levy as required by St.
1979, c. 151, §§ 12A and 16, it was held that the plaintiffs were entitled
to seek abatements under G. L. c. 60, § 98, and were not required to

---

[1] Owners of commercial and industrial real estate in the city of Fitchburg.

[2] The mayor, city council, board of assessors, and tax collector of the
city of Fitchburg.

seek relief from the Appellate Tax Board, which did not have jurisdiction over the issue. [602]


CIVIL ACTIONS commenced in the Superior Court Department on February 27, 1981, and March 6, 1981.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 24, 1981, and subsequently transferred to the Superior Court Department.

Following the decision of this court reported in 386 Mass. 752 (1982), further proceedings were had before *William G. Young*, J., and entry of judgment was ordered by *James P. Lynch, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Philip Burling (Philip W. Mueller* with him) for the plaintiffs.

*H. Reed Witherby*, Assistant Attorney General, for the Commissioner of Revenue.

*Wayne Scott (John M. Lynch & Wayne Hartwell* with him) for Board of Assessors of Fitchburg & others.

O'CONNOR, J. The plaintiff taxpayers appeal from a judgment entered in the Superior Court following our decision in *Macioci* v. *Commissioner of Revenue*, 386 Mass. 752 (1982) (*Macioci I*). We granted the plaintiffs' application for direct appellate review. That judgment declares in part that, although the taxpayers may seek an abatement of real estate taxes for fiscal 1981 and 1982 before the Appellate Tax Board on the ground of excessive valuation, they have no right either before the Appellate Tax Board or in the Superior Court to recoup taxes for those years on the ground that their property was taxed at a higher rate than other types of real estate in Fitchburg. The issue raised by the challenge to that part of the judgment may be characterized as the classification issue. The judgment also declares that the only plaintiffs entitled to monetary recovery as a result of Fitchburg's failure to apply free cash available at the close of fiscal 1980 to reduce its tax levy in fiscal 1981 are those who, in addition to commencing actions in the Superior Court, had also instituted proceedings before the Appellate Tax Board. We characterize the issue raised by the

appeal from this second part of the judgment as the free cash issue. The two issues are quite distinct.

We vacate the judgment in its entirety, and order the entry of judgment in the Superior Court declaring that (1) Fitchburg's implementation of differential taxation of property by use classification for fiscal 1981 and 1982 was invalid; (2) the Appellate Tax Board has jurisdiction to abate resulting excessive taxes for fiscal 1981 and 1982 assessed to any plaintiff who has appropriate proceedings pending before the board; (3) the abatements are to reflect the average municipal rate, but they are not to reflect the city's failure to apply available free cash to reduce the fiscal 1981 tax levy; and (4) each plaintiff, rather than only those plaintiffs who have raised the free cash issue before the Appellate Tax Board, is entitled to recover from Fitchburg in the Superior Court the excess taxes paid by that taxpayer as a result of Fitchburg's failure to apply free cash available at the close of fiscal 1980 to reduce the tax levy in 1981. We remand the case to the Superior Court for further proceedings consistent with this opinion.

A general discussion of the legal background of the classification and free cash issues at the outset of this opinion may facilitate understanding of the controversy and its rather long procedural history. We address the background of the classification issue first. Before the Massachusetts Constitution was amended in 1978, Part II, c. 1, § 1, art. 4, mandated that the Legislature impose "proportional and reasonable assessments, rates and taxes." The imposition of taxes on one class of persons or property at a different rate from the rate applied to other classes was prohibited regardless of "whether that discrimination [was] effected directly in the assessment or indirectly through arbitrary and unequal methods of valuation." *Bettigole* v. *Assessors of Springfield*, 343 Mass. 223, 230-231 (1961), quoting *Cheshire* v. *County Comm'rs of Berkshire*, 118 Mass. 386, 389 (1875). However, art. 112 of the Amendments to the Massachusetts Constitution, ratified by the people in 1978, added after the words, "proportional and reasonable assessments, rates and taxes, . . ." in Part II, c. 1, § 1, art. 4, the words, "except that . . . the general court may classify real property according to its use in no more than four classes and

to assess, rate and tax such property differently in the classes so established, but proportionately in the same class, and except that reasonable exemptions may be granted."

Article 112 of the amendments was not self-executing, but merely permitted the Legislature in its discretion to authorize municipalities to tax different types of real estate differently — either by applying unequal rates to distinct use classes, or by assessing the value of properties in different classes at unequal percentages of fair cash value — or by combining those methods. The Legislature chose the first option, and authorized taxation by use classification accomplished by the application of unequal rates to properties uniformly assessed at 100% of full and fair cash value. G. L. c. 59, § 2A (1984 ed.). The Legislature has provided that "[c]lassification of real property shall not be implemented in any city or town until the commissioner has certified in writing to the assessors of such city or town that the assessments on the real property that they propose to make are at full and fair cash valuation as required by section thirty-eight . . . ." G. L. c. 59, § 2A (c), as appearing in St. 1980, c. 261, § 12.

Before turning to the procedural history of this case, we recite the pertinent provisions of St. 1979, c. 151, § 12A, since that statute is critical to an understanding of the second issue before us, the free cash issue. Statute 1979, c. 151, §§ 12A and 16, required with certain exceptions that, in fiscal 1980 and 1981, any municipality that had free cash available at the close of a fiscal year must use it "as a continuing appropriation for the purpose of reducing the property tax levy for the next succeeding fiscal year."

The first proceedings raising the classification and free cash issues were brought by eight of the plaintiffs in the form of appeals to the Appellate Tax Board. Those appeals are still pending. Subsequently, several plaintiffs brought separate actions in the Superior Court to recover back taxes under G. L. c. 60, § 98, and several plaintiffs brought a ten-taxpayer action in the Superior Court seeking injunctive relief under G. L. c. 40, § 53, as well as declaratory relief under G. L. c. 231A. All those court actions, together with an action for injunctive relief that had been filed in the Supreme Judicial Court for

Suffolk County and had been transferred to the Superior Court, were tried in the Superior Court. A judge of that court denied the taxpayers either injunctive or monetary relief on the classification issue. However, he granted relief to those plaintiffs who had appeals pending before the Appellate Tax Board on the issue of Fitchburg's failure to apply its fiscal 1980 free cash to reduce its fiscal 1981 tax levy. The judge deferred to the Appellate Tax Board the question of the board's jurisdiction on the free cash issue, but he retained jurisdiction in the event the board decided that it had no jurisdiction over that matter. Appeals and cross appeals were filed, and this court granted direct appellate review (*Macioci I*).

In *Macioci I*, we identified the issues as "the propriety of the Superior Court judge's findings and rulings regarding (1) certification by the Commissioner of Revenue . . . that the city of Fitchburg . . . was qualified to implement differential taxation of property by use classification for fiscal years 1981 and 1982; (2) implementation by the city of that program; and (3) failure of the city in 1981 to apply free cash available at the close of fiscal 1980 to reduce its property tax levy." *Id.* at 754. With respect to the classification issue, the Superior Court judge had declared that "the procedure actually followed by the Commissioner and the Assessors implementing the factoring program for the city of Fitchburg was illegal and improper in that it did not cause each sub-class of property in that city to be factored to 100% of full and fair cash value." *Id.* at 767.[3] We adopted that declaration, and we also held, contrary to the judge's conclusion, that the Commissioner's reliance on a 1980 "equalized value" study pursuant to G. L. c. 58, §§ 9-10C, was improper. *Id.* at 766-767 & n.26. Thus, we ruled that "the Commissioner did not properly certify Fitchburg for classification," *id.* at 768, and we proceeded to discuss what remedies might be available to the plaintiffs. *Id.* at 768-770.

We held that the plaintiffs were not entitled to injunctive relief under G. L. c. 40, § 53, from the Commissioner's im-

---

[3] Factoring is a method of achieving full and fair cash value. In substance, a multiplier is found which will produce an assessment/sales ratio of 100%.

proper certification, because the relevant tax lists had already been committed to the tax collectors. *Id.* at 768-769. We also held that the plaintiffs were not entitled to a judgment granting monetary relief under G. L. c. 60, § 98. *Id.* at 770. Thus, our holding in those regards accorded with the judgment entered in the Superior Court. However, our reasoning differed significantly from that of the Superior Court judge. The judge had denied relief under c. 60, § 98, on the classification issue despite the deficiencies in the certification process because he concluded that those deficiencies had not caused the plaintiffs to pay higher taxes than they would have paid if the Commissioner had properly certified Fitchburg for classification. *Id.* at 769-770 & n.32. We rejected the judge's conclusion that the taxpayers had not been injured by the improper certification. We stated: "[I]t appears that the taxpayers may have been injured by the factoring system as adopted. Notwithstanding an apparent injury, however, the taxpayers cannot avail themselves of relief under § 98 for errors in assessment. We have recently made it clear that 'an action under c. 60, § 98, cannot be maintained unless the tax is wholly void.' *Sears, Roebuck & Co.* v. *Somerville*, 363 Mass. 756, 757-758 (1973)." We concluded that the tax was not wholly void, and that therefore "[f]or any injury which the taxpayers may have suffered due to improper assessments, they are limited to administrative relief. See G. L. c. 59, § 59." *Id.* at 770. The statements from *Macioci I*, quoted immediately above, are at the root of the present controversy relating to the classification issue. We will return to those statements later in the opinion.

With respect to the free cash issue, the Superior Court judge declared that, pursuant to the requirements of St. 1979, c. 151, § 12A, Fitchburg should have applied the free cash available at the end of fiscal 1980 to reduce the fiscal 1981 tax levy. We agreed. *Macioci I* at 771. We noted that the "judge [had] declared that the taxpayers were entitled to relief pursuant to the abatement procedures in G. L. c. 59, § 59, if they had properly pursued that remedy," that the judge had committed to the Appellate Tax Board the question whether the board had jurisdiction to decide the free cash issue, and that the judge

had retained jursidiction of the free cash issue in case the board ruled that it did not have jurisdiction. We then adopted the judgment of the Superior Court as to the free cash issue, and in conformity with that judgment we, too, committed that issue to the board.

After *Macioci I* was decided, the action shifted to the Appellate Tax Board, where the appeals of several plaintiffs were pending. Fitchburg moved to dismiss those appeals, and the taxpayers moved that the appeals be advanced for trial. The board ordered that the appeals be advanced for trial on the classification issue, but concluded that it lacked jurisdiction over the free cash issue. Activity then shifted to the Superior Court.

In the Superior Court, the same judge whose order had been reviewed by this court in *Macioci I* ordered the board to appear and show cause why the appeals pending before the board "should not be stayed pending further action by [the Superior] Court," and "why further proceedings after rescript by the Supreme Judicial Court should not be heard in a single proceeding before the Superior Court." The board appeared as ordered and maintained that it had jurisdiction over the classification issue. In response to appropriate motions, the judge made a declaration, from which the plaintiffs now appeal, that "the plaintiff taxpayers are not entitled to the tax rate abatement remedy which they seek although this judgment does not preclude the plaintiffs from pursuing the abatement remedy before the Appellate Tax Board on the ground of disproportionate or excessive valuations." Concerning the free cash issue, the judge again declared the unlawfulness of Fitchburg's failure to apply the free cash available at the close of fiscal 1980 to reduce the tax levy for fiscal 1981, but he limited relief to those plaintiffs who had not only commenced actions in the Superior Court pursuant to G. L. c. 60, § 98, but who also had filed appeals with the Appellate Tax Board. The order directed that monetary judgments issue from the Superior Court in favor of those plaintiffs after resolution by the board of any relevant factual issues in dispute.

We come now to our discussion of the issues before us, and we begin with the classification issue.

1. *Classification.* We need not discuss all the plaintiffs' arguments supporting their assertion that the judge erred when he declared that none of the plaintiff taxpayers is entitled to the "tax rate abatement remedy which they seek [before the Appellate Tax Board] although [they are not precluded] from pursuing the abatement remedy before the Appellate Tax Board on the ground of disproportionate or excessive valuations." It is enough that we agree with the plaintiffs that our decision in *Macioci I* not only established the impropriety and unlawfulness of the Commissioner's certification that Fitchburg's proposed assessments were at full and fair cash value, but our decision also established that Fitchburg's implementation of differential taxation by use classification was invalid, and that those plaintiffs who had commenced timely appeals before the Appellate Tax Board have remedies before the board for whatever injuries they may have suffered from being taxed at excessive rates. See G. L. c. 59, §§ 59 and 65. We reject the defendants' contentions that our decision in *Macioci I* forecloses the plaintiffs' arguments, and that, in any event, G. L. c. 59, §§ 59 and 65, provide relief only from disproportionate or excessive valuations.

Prior to our decision in *Macioci I*, in *Opinion of the Justices*, 378 Mass. 802, 805, 806 (1979), the Justices of this court described full and fair cash valuation as "a foundational requirement" for differential taxation according to use classification, and in *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 661 (1979), this court said that classification for tax purposes "takes practical effect in a locality only after it is certified as assessing at fair cash value." We described certification as a "prerequisite" to differential taxation, see *id.* at 664-665, describing that prerequisite as "a means of assuring that local assessors will comply with the legal requirement of fair valuation. See G. L. c. 59, § 38." *Id.* at 664.

The defendants apparently read our decision in *Macioci I* to say that, even though real estate in Fitchburg was not in fact assessed at full and fair cash value, and even though the Commissioner's certification to the contrary was improper and un-

lawful, the certification nevertheless was given, and therefore the statutory prerequisite for differential taxation was met. That is not a reasonable interpretation of *Macioci I*. In *Macioci I*, it was beyond dispute that the commissioner had certified that assessments were at full and fair cash value. The litigated issue was whether the certification was proper and effective. Had our view been that that certification satisfied G. L. c. 59, § 2A (*c*), regardless of whether it was proper and lawful, we simply would have said so and thus disposed of the case in a few brief sentences without engaging, as we did, in a full discussion of the Commissioner's procedures and their deficiencies. Clearly, our discussion was in response to the basic question presented by the case: whether Fitchburg's imposition of differential taxes based on use classification in fiscal 1981 and 1982 was valid. Our ruling on the propriety of the Commissioner's certification was incidental to our resolution of that question. It also was determinative. The fair implication of our answer was that, because the foundational requirement of full and fair cash valuation had not been met, and because the prerequisite certification that it had been met was improper and illegal, differential taxation was not authorized. If the requirement of certification, set forth in G. L. c. 59, § 2A (*c*), was designed by the Legislature to assure municipal assessments at full and fair cash value, as we have said it was, *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue, supra* at 664, that objective would have been frustrated by a determination by this court that *any* certification, even an improper and unlawful one, would suffice to qualify a city or town to implement differential taxation by use classification. At least inferentially, we came to the opposite conclusion, and we then proceeded to a discussion of what remedy might be available to the taxpayers. *Macioci I* at 768.

We held that the plaintiffs were not entitled to injunctive relief pursuant to G. L. c. 40, § 53, because the assessments in question already had been committed to the tax collector. *Id.* at 769. Then we addressed the plaintiffs' claim that they were entitled to recover back taxes under G. L. c. 60, § 98. The Superior Court judge had denied relief under c. 60, § 98,

on the ground that the plaintiffs had not been injured by the Commissioner's and the assessors' improprieties. Stating that the plaintiffs "may have been injured by the factoring system as adopted," we rejected lack of injury as a justification for withholding relief pursuant to G. L. c. 60, § 98. We concluded, however, that even though the plaintiffs were not disqualified from recovery under c. 60, § 98, for the reason assigned by the judge, namely lack of injury, they nevertheless could not recover under that statute because "an action under c. 60, § 98, cannot be maintained unless the tax is wholly void," and we concluded the property tax in Fitchburg was not rendered wholly void by the implementation of differential taxation. *Id.* at 770, quoting *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756, 757-758 (1973).

In explanation, we said that "[n]otwithstanding an apparent injury . . . the taxpayers cannot avail themselves of relief under § 98 for *errors in assessment. . . .* For any injury which the taxpayers may have suffered *due to improper assessments,* they are limited to administrative relief. See G. L. c. 59, § 59" (emphasis added). *Macioci I* at 770. The defendants' contention, apparently accepted by the judge, is that the emphasized words signify our conclusion that the plaintiffs' right to relief is limited to relief from errors in valuation. That was not our conclusion. It is true that the word "assessment" frequently is used to describe valuation of property for tax purposes. But it also is frequently used to describe the determination or imposition of a tax. That we used the word "assessment" in the latter sense is apparent, we think, from the context. Having decided that Fitchburg was not qualified to tax different properties at different rates in fiscal 1981 and 1982, we turned our attention to the availability of taxpayer remedies, and we concluded that, for any injuries suffered because of improper assessments of taxes due to unlawful use classification, the plaintiffs' remedies were administrative.

General Laws c. 59, § 59, provides that a person who is "taxed at more than his just proportion" may apply to the assessors for an abatement. The Appellate Tax Board has jurisdiction to review denials of such applications. G. L. c. 59,

§§ 64 and 65. It is clear from the statutory language that the abatement procedure is not limited to granting relief from disproportionate or excessive valuations of property for tax purposes. Rather, the statute also provides a remedy for the imposition of taxes that are illegally disproportionate because of the application of unequal rates, as here. We conclude, therefore, that those plaintiffs who have initiated appropriate proceedings raising the classification issue before the Appellate Tax Board are entitled to abatements for fiscal 1981 and 1982.

We recognize the protracted nature of these proceedings. Therefore, we deem it appropriate to rule now on the level of abatements to which the plaintiffs will be entitled before the board. The plaintiffs contend that they should be granted abatements to the level of the tax rate applied to the most favored class; that is, abatements reflecting the residential property tax rate. See *Tregor* v. *Assessors of Boston*, 377 Mass. 602, cert. denied, 444 U.S. 841 (1979). We disagree. We think it more appropriate, in view of the public policy expressed by G. L. c. 58A, § 14, that abatements should be to the municipal average, thus reflecting the rate that should have been applied to the plaintiffs' property had classification not occurred.

2. *Free Cash.* In *Macioci I*, at 770-771, we stated our approval of the judge's earlier conclusion that Fitchburg had violated St. 1979, c. 151, § 12A, by not applying the free cash available at the close of fiscal 1980 to reduce the property tax levy for fiscal 1981. Also, the judge had declared that those plaintiffs who had initiated abatement proceedings before the Appellate Tax Board were entitled to relief under G. L. c. 59, § 59, but then the judge expressed reservations about whether the board had jurisdiction over the matter, and he committed the jurisdictional question to the board, retaining jurisdiction in the Superior Court in case the board should conclude that it was without jurisdiction. We affirmed the judge's order. *Id.* at 771. In doing so, we overlooked the fact that the judge's limitation of recovery to those plaintiffs who had initiated proceedings before the board necessarily and incorrectly assumed an affirmative answer to the then unresolved question whether the board had jurisdiction. Surely, there could

be no rational basis for imposing on a taxpayer as a condition of recovering overpaid taxes that he initiate proceedings before an agency lacking jurisdiction to entertain the matter.

Following our decision in *Macioci I*, the board determined that it did not have jurisdiction over the free cash controversy. Thereafter, the judge, without further resolving the jurisdictional question, declared that the only plaintiffs who could recover in the Superior Court actions were those who had appeals pending before the board.

We agree with the board that it does not have jurisdiction over the free cash controversy. That issue falls within none of the grounds for Appellate Tax Board jurisdiction under G. L. c. 59, §§ 59, 64 and 65; specifically, taxation of a person "at more than his just proportion," or as a result of an improper classification, or due to excessive valuation.

In *Sears, Roebuck & Co.* v. *Somerville*, 363 Mass. 756, 757-759 (1973), the plaintiff claimed that its property was assessed at a higher percentage of fair cash value than other property in the city, and that therefore, it paid a disproportionate tax. The plaintiff sought recovery under G. L. c. 60, § 98. We reiterated our previously stated rule that "an action under G. L. c. 60, § 98, cannot be maintained unless the tax is wholly void, and the exclusive remedy to secure adjustment of an excessive tax is by abatement," *id.* at 757-758, and we denied recovery. But here, unlike the plaintiff in *Sears, Roebuck & Co.*, the plaintiffs do not claim that their properties were disproportionately taxed. Rather, their claim, established by *Macioci I* as valid, is that every property in the city was assessed excessively because available free cash was not applied to reduce the fiscal 1981 tax levy.

While we recognize that the city's failure to apply free cash to reduce the tax levy did not result in the entire property tax scheme's being "wholly void" within the literal meaning of the rule to which we referred in the *Sears, Roebuck & Co.* case, we nevertheless conclude that recovery under the statute in the circumstances of this case would be consistent with the rule and appropriate. To conclude otherwise would be to deny the plaintiffs any recovery for an established wrong.

3. *Conclusion.* The judgment is vacated. Judgment shall enter in the Superior Court declaring as follows:

(1) Fitchburg's implementation of differential taxation by use classification for fiscal 1981 and fiscal 1982 was invalid.

(2) The Appellate Tax Board has jurisdiction to abate resulting excessive taxes for fiscal 1981 and 1982 assessed to any plaintiff who has appropriate proceedings pending before the board.

(3) The abatements are to reflect the average municipal rate, but they are not to reflect the city's failure to apply available free cash to reduce the fiscal 1981 tax levy.

(4) Each plaintiff, rather than only those plaintiffs who have raised the free cash issue before the Appellate Tax Board, is entitled to recover from Fitchburg in the Superior Court any excess taxes paid by that taxpayer as a result of Fitchburg's failure to apply free cash available at the close of fiscal 1980 to reduce the tax levy in 1981. The case is remanded to the Superior Court for further proceedings consistent with this opinion.[4]

*So ordered.*

---

[4] The city urges us to impose sanctions on the plaintiffs for a frivolous appeal under Mass. R. A. P. 25, as amended, 378 Mass. 925 (1979). We have concluded that the appeal has merit. The city's request is denied.